337 A.2d 582
**COMMONWEALTH of Pennsylvania, Appellee,**
v.
**Eddie JACKSON and Ronald Garrett, Appellants.**

Supreme Court of Pennsylvania.
Argued Jan. 16, 1975.
Decided May 13, 1975.

634

John H. Broujos, Carlisle, Henry B. Rothblatt, New York City, Milton R. Henry, Detroit, Mich., for appellants.

Edgar B. Bayley, First Asst. Dist. Atty., Carlisle, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

Appellants, Eddie Jackson and Ronald Garrett, were arrested and charged with unlawful possession of a controlled substance, unlawful possession with intent to deliver dangerous drugs and conspiracy to commit an unlawful act.[1] A search, pursuant to a warrant, of the trunk of a 1972 Ford Thunderbird in which the appellants had been traveling, revealed a box containing approximately fifteen pounds of heroin and cocaine. A pretrial motion to suppress this evidence was filed and, after an evidentiary hearing, denied. Thereafter, appellants were tried before a judge, sitting without a jury, and adjudged guilty of the charges. The challenged evidence was introduced against the appellants at trial. Post trial motions were denied and a sentence of five to fifteen years imprisonment, plus the payment of a $10,000 fine was imposed on each appellant. On appeal, the Superior Court affirmed the judgments of sentence in separate per curiam orders. We then granted allocatur.

The record discloses the following:

On June 14, 1972, at approximately 6:00 p. m., Trooper George Wynn of the Pennsylvania State Police

[1]. The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 165, No. 64, § 13, 35 P.S. § 780–113 (Supp. 1974–1975).

stopped a Ford Thunderbird automobile traveling west on the Pennsylvania Turnpike for a speeding violation.[2] The driver, appellant Jackson, produced an operator's license issued to Eddie Jackson of Detroit, Michigan, and a Michigan registration for the vehicle in the name of Teresa Brown of Detroit, Michigan. The appellant Garrett was the vehicle's sole passenger. The officer advised Jackson he would be arrested for speeding and asked him to exit the vehicle. The two then proceeded to the officer's police patrol automobile nearby and Garrett remained in the Ford.

While seated in the police vehicle, Trooper Wynn immediately advised Jackson of his rights as mandated by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966). The officer then went on to tell Jackson that he "suspected him of transporting large quantities of heroin across Pennsylvania . . ." because he "was familiar with his [Jackson's] stop on the 21st of January, 1972, at which time he had a brown paper bag containing $25,000 in U.S. paper currency" and that on the 21st day of January, 1972, Trooper Wynn "was made aware of information from Detroit . . . that he [Jackson] was a large narcotic dealer in the Detroit area" who used the Pennsylvania Turnpike to transport large quantities of heroin. During the course of this conversation, Jackson said nothing incriminating, but told Trooper Wynn he was traveling from Newark, New Jersey, and had left Detroit on Monday, June 12th.

Trooper Wynn then returned to the Ford automobile and advised Garrett of his *Miranda* rights. Garrett stated he understood his rights and, upon questioning, informed Trooper Wynn that he and Jackson were traveling from Newark, New Jersey, and had departed from Detroit on Tuesday, June 13th. When confronted with this apparently contradictory statement, Jackson stated

---

2. The vehicle had been stopped earlier the same day while traveling east on the turnpike.

that Garrett was "high" and probably unaware what day it was. Subsequently, a search of the interior of the Ford automobile was conducted by Trooper Wynn and Trooper Glunt, who had arrived on the scene.[3] The troopers discovered a Blue Cross identification card issued in the name of Joseph Weaver, an individual whom Jackson and Garrett denied having any knowledge of. In addition, the troopers discovered that the trunk key was not present with the ignition key and, when Jackson and Garrett claimed to have no knowledge of the trunk key, a decision was made to transport them, as well as the Ford automobile, to the State Police barracks in Newville, Cumberland County.

Enroute to the State Police barracks, Garrett stated he had traveled to Newark, in the Ford automobile, with a girl friend named Ruby Smith. However, upon being advised by Trooper Wynn that the same vehicle had been stopped earlier in the day for speeding on the turnpike and that the arresting officer had reported the occupants of the vehicle to be two males, Garrett changed his story. He explained that Trooper Wynn had misunderstood his first statement and that his traveling companion had been Reuben Smith.

Following arrival at the State Police barracks, Trooper Wynn obtained a warrant to search the trunk of the Ford automobile for "Narcotics, Controlled Substances, and Stolen Articles." The affidavit in support of the issuance of the warrant recounted the events which transpired on June 14th, namely: (1) the stopping of the Ford automobile for speeding on two occasions; (2) the inconsistent and contradictory statements given by Jackson and Garrett; (3) the absence of a trunk key and the

3. The suppression hearing court determined that Jackson had "voluntarily and intelligently" consented to this search. The appellants contest this determination and assert that any claimed consent was obtained only as the result of the troopers' claim of lawful authority to go through the vehicle. In view of our disposition of this case, it is not necessary to now reach this issue.

failure of Jackson and Garrett to know the whereabouts of such key; and (4) the discovery, in the interior of the vehicle, of a Blue Cross identification card issued to Joseph Weaver, an individual whom both Jackson and Garrett denied having any knowledge of. In addition, the affidavit related: (1) that on *January 21, 1972*, Jackson had been stopped for speeding while traveling east on the Pennsylvania Turnpike and a brown paper bag containing twenty-five thousand dollars in cash was found in his possession; (2) that as of *January 21, 1972,* the Detroit Police Department was in receipt of information from a "reliable confidential informant" that Jackson was a large scale narcotics dealer in the Detroit area; and (3) that shortly after *January 21, 1972,* Jackson and Garrett were arrested by federal authorities on narcotics charges. The subsequent search produced the heroin and cocaine which were eventually introduced into evidence at trial.

Appellants contend the warrant which authorized the search was constitutionally defective, in that it was issued without a showing of probable cause and, thus, renders the evidentiary use of the property seized in the execution of the warrant as constitutionally proscribed at trial. We agree.

██ Before a magistrate may issue a constitutionally valid search warrant he must be furnished with information sufficient to persuade a reasonable man that probable cause to conduct a search does exist. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Commonwealth v. D'Angelo*, 437 Pa. 331, 263 A.2d 441 (1970). The requisite probable cause must exist at the time the warrant is issued and be based on facts which are closely related in time to the date of the issuance, for it is well-settled that stale information cannot supply the probable cause necessary for

the issuance of a search warrant. *Sgro v. United States,* 287 U.S. 206, 210, 53 S.Ct. 138, 77 L.Ed. 260 (1932); *Commonwealth v. Eazer,* 455 Pa. 320, 323, 312 A.2d 398 (1973); *Commonwealth v. Simmons,* 450 Pa. 624, 629–630, 301 A.2d 819 (1973); *Commonwealth v. Shaw,* 444 Pa. 110, 113, 281 A.2d 897 (1971).

 Instantly, the only information contained in the affidavit relating to the possible presence of narcotics or other controlled substances in the trunk of the Ford automobile, dated from January 21, 1972, almost five months prior to the issuance of the search warrant. As this Court noted in *Commonwealth v. Shaw,* supra, 444 Pa. at 113–114, 281 A.2d at 899:

> "If the issuing officer is presented with evidence of criminal activity at some prior time, this will not support a finding of probable cause as of the date the warrant issues, *unless it is also shown that the criminal activity continued up to or about that time.*" [Emphasis supplied.]

Here, as in *Shaw,* the requirement of establishing continuing criminal activity has not been satisfied. See also *Commonwealth v. Simmons,* supra.

 The Commonwealth argues the furtive behavior of the appellants, when considered with the reports of past criminal narcotic activity, dictated the probability that, on June 14th, the appellants were using the Pennsylvania Turnpike for the transportation of narcotics, thus supplying the required element of continuity. However, evidence to demonstrate continued criminal activity must establish *actual* continuity of the illegal enterprise. *Commonwealth v. Eazer,* supra, 455 Pa. at 324, 312 A.2d at 400. Herein, Trooper Wynn possessed no information that a crime had been committed. He had neither an informant's tip nor the benefit of police surveillance to indicate that narcotics were being transported in the Ford vehicle. Although the appellants' behavior may

not have been of an outwardly innocent character, it was not such as indicated a probability that narcotics would be found in the Ford automobile. The appellants' responses and movements may have appeared suspicious to Trooper Wynn, but "mere suspicion" is not an adequate ground for the issuance of a search warrant. *Nathanson v. United States*, 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1933); *United States v. Day*, 455 F.2d 454, 456 (3d Cir. 1972); *Commonwealth v. Pinno*, 433 Pa. 1, 5, 248 A.2d 26 (1968). Therefore, we conclude there did not exist probable cause to search the trunk of the Ford automobile for narcotics and controlled substances.

The Commonwealth contends that, even if probable cause did not exist to justify a search for narcotics, there was probable cause to search the trunk of the automobile for stolen goods, and since the presence of the narcotics was disclosed through this search, this contraband was properly seized under the "plain view" doctrine set forth in *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S. Ct. 2022, 29 L.Ed. 564 (1971). We find this position to be devoid of merit.

 Fundamental to the application of the "plain view" doctrine is the principle that the seized objects must not have been put in plain view as a result of unlawful police conduct. *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Commonwealth v. Jeffries*, 454 Pa. 320, 327, 311 A.2d 914 (1973). Instantly, probable cause to search the trunk for stolen goods did not exist. The sole indication that stolen goods might be found in the trunk of the Ford automobile was the discovery of an unexplained Blue Cross identification card in the interior of the vehicle. Trooper Wynn possessed no information indicating the Blue Cross card had been stolen, nor was he in possession of knowledge indicating the appellants were transporting stolen goods. Under these circumstances, the mere discovery of an unexplained Blue Cross identification card,

in a *borrowed* vehicle, did not justify the police in believing that fruits of criminal activity would be found upon an inspection of the trunk. *Commonwealth v. Carrington,* 227 Pa.Super. 472, 324 A.2d 531 (1974), relied upon by the Commonwealth to support the validity of the search on this theory is decidedly different factually. Therein the automobile occupied by Carrington and others had been reported to the police as stolen and had in plain view, on the front seat, when stopped by the police, a can containing three plastic bags of white powder.

The orders of the Superior Court are reversed. The judgments of sentence of the court of original jurisdiction are reversed and a new trial is ordered.

JONES, C. J., dissents.