374 A.2d 1348

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**John B. WATERS.**

Superior Court of Pennsylvania.

Submitted June 14, 1976.

Decided June 29, 1977.

124

Steven H. Goldblatt, Assistant District Attorney, Philadelphia, for appellant.

Larry A. Colston, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Appellee, John B. Waters, was convicted of rape[1] and burglary.[2] The lower court granted appellee's post-verdict motion for a new trial, holding that his arrest and subsequent confession were tainted by an illegal search, and, therefore, the confession should have been suppressed.[3] The Commonwealth has appealed from this order.

At approximately 5:30 a.m. on May 25, 1975, the prosecutrix was awakened, blindfolded and raped by the appellee, who had broken into her apartment. Although she was unable to see her assailant's face, she informed the police

1. 18 Pa.C.S. § 3121.

2. 18 Pa.C.S. § 3502.

3. The lower court also ruled that because the Commonwealth failed to answer the pre-trial suppression application within seven days of service, it admitted all well pleaded averments in appellee's application. See Pa.R.Crim.P. 308(a). Rule 323(e), which controls this situation, provides that "[u]pon the filing of such application, a judge of the court shall fix a time for hearing, which may be either prior to or at trial, and which shall afford the attorney for the Commonwealth a reasonable opportunity for investigation and answer . . ."

Appellee never contended that the Commonwealth failed to answer within a reasonable time. Moreover, he never raised this contention at the suppression hearing or trial. The lower court, therefore, improperly based its decision on Rule 308(a).

that he was black, about five feet one inch in height and in his early twenties. While interviewing Geraldine Hopkins, a tenant in the same apartment building, Detective Lubiejewski was informed that, at approximately the same time as the alleged rape, a Negro male, who lived in apartment A–6 and identified himself as "John," unsuccessfully requested admittance to her apartment. Detective Lubiejewski also learned from his supervisor that an anonymous caller had stated that "John, the man that did the rape, is now in apartment A–6."

Detective Lubiejewski and two associates approached apartment A–6 and knocked on the door. Although no one answered, the detectives heard "muffled sounds" from within the apartment. They knocked a second time and announced their identity. When no one answered, they forced the door and entered. The muffled sounds were emanating from a radio in the kitchen; however, the premises were unoccupied.

The detectives found two letters addressed to Wanda Conyers, apartment A–5, on a table next to the door.[4] Detective Lubiejewski looked through a telephone directory, which he found on a table, and discovered the name and address of appellee's mother. The detectives telephoned Mrs. Waters and learned that appellee was sleeping at her home. Appellee was arrested at approximately 10:30 a.m. and taken to West Detective Division where he waived his *Miranda* rights and gave an inculpatory statement.

■ The Commonwealth argues that even assuming the illegality of the search, appellee's statement was admissible under the Supreme Court's decision in *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Initially, we note that the basic question is "whether, granting establishment of the primary illegality, the evidence to

4. The detectives established that this mail was stolen from the Conyers' mailbox. Wanda Conyers correctly described the radio as identical to one which was stolen from her apartment. The police confiscated the radio. Appellee was also tried for the burglary of the Conyers' apartment, but was eventually acquitted on this charge.

which [the] instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States, supra* at 488, 83 S.Ct. at 417. Moreover, "[m]ere 'but-for' causation is not sufficient to establish the causative relationship necessary to taint . . . post-illegal arrest verbal evidence." *Commonwealth v. Bishop,* 425 Pa. 175, 182 n.5, 228 A.2d 661, 665 n.5 (1967); *see also Wong Sun v. United States, supra; Commonwealth v. Richard,* 233 Pa.Super. 254, 336 A.2d 423 (1975). These rules apply where, as here, it is charged that an alleged illegal search tainted an arrest and subsequent confession.

■ The Commonwealth relies extensively on *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972). While not necessarily controlling, *Garvin* is instructive.[5] The Supreme Court pointed out that "[n]o law abiding society could tolerate a presumption that but for the illegal arrest the suspect would never have been required to face his accusers." *Commonwealth v. Garvin, supra* 448 Pa. at 264, 293 A.2d at 37; *see also United States v. Hoffman,* 385 F.2d 501 (7th Cir. 1967). In the instant case, the only effect of the alleged illegal search was to accelerate the time of appellee's arrest. The information from the telephone directory did not identify appellee as the attacker or implicate him in the rape.[6] The detectives intended to arrest appellee when they went to his apartment. They used the information merely to locate him. Under a very similar set of circumstances the Court of Appeals for the Fourth Circuit held, in *Leek v. Maryland,* 353 F.2d 526 (4th Cir. 1965), that the evidence produced at trial was so attenuated from the information gathered during the illegal search that the trial judge was

5. In *Commonwealth v. Garvin, supra,* 448 Pa. at 266, 293 A.2d at 38, the lower court refused to suppress a post-arrest, out-of-court identification which immediately followed an illegal arrest because it was "clear that the illegality contributed neither to the knowledge of the witnesses nor to the accuracy of their identifications."

6. The search did implicate appellee in the burglary of Wanda Conyers' apartment; however, appellee was not originally arrested on this charge.

justified in admitting the evidence.[7] The court ruled that "[t]o hold that the evidence in question was tainted by the illegal act of the police would be tantamount to saying that if the police conduct themselves improperly in any manner . . . then the trial must be set aside." *Leek v. Maryland, supra* at 528. We hold that appellee's arrest and inculpatory statement were not tainted by any illegality in the search.

In appellee's brief, it is contended that, at the time of his arrest, the police did not have probable cause to believe that he committed the rape, and, therefore, his confession should have been suppressed as the fruit of an illegal arrest. Appellee's pre-trial application to suppress contained the following averment:

"17. The alleged confession . . . was a result of an illegal arrest in that probable cause for the arrest was obtained by the unlawful search of [appellee's] apartment without a valid search warrant or the existence of circumstances to justify a warrantless search."

The substance of appellee's pre-trial theory was that his arrest was illegal because probable cause resulted from information gathered during an illegal search. His confession, therefore, should have been suppressed as the fruit of the illegal *arrest*. This contention, which has already been discussed, presents a substantially different theory than that pressed on this appeal. Appellee now argues that regardless of the search and seizure issues, the confession must be suppressed because it was tainted by an arrest without probable cause.

As previously pointed out, the search revealed no evidence implicating appellee in the rape. Since the prosecution demonstrated that probable cause was not obtained during the search, the major premise to appellee's pre-trial

---

7. In *Leek*, the police obtained the address of the defendant's place of employment during an illegal search of his apartment. After an arrest based on probable cause, he was convicted of rape. The court of appeals held that the lower court properly admitted into evidence the clothes that the defendant was wearing at the time of the arrest.

theory was refuted. It can hardly be said that it was incumbent on the prosecution to prove the existence of probable cause when it was not directly in issue.

The Supreme Court pointed out in *Commonwealth v. Mitchell,* 464 Pa. 117, 346 A.2d 48 (1975) that:

> "Appellate Courts render a disservice to judicial economy and the efficient operation of our court system where they freely accept issues that could have and should have been first presented to the courts below for their consideration.
>
> .    .    .    .    .
>
> [S]uch a procedure   .   .   .   deprives the reviewing court of the benefit of the reasoning of the lower court on the issues at hand   .   .   .. Where the parties below were not aware that a particular issue is being raised, it [is] quite likely that testimony germane to that issue would be overlooked or believed unnecessary and consequently not presented." *Id.* 464 Pa. at 124, 346 A.2d at 52.

██ ██ This is particularly true in the present situation. Even assuming a lack of probable cause, the Commonwealth could have attempted to demonstrate that the confession was not tainted by the illegal arrest. *See, e. g., Commonwealth ex rel. Craig v. Maroney,* 348 F.2d 22 (3rd Cir. 1965), *cert. denied,* 384 U.S. 1019, 86 S.Ct. 1966, 16 L.Ed.2d 1042 (1966); *Commonwealth v. Brooks,* 468 Pa. 547, 364 A.2d 652 (1976). This court cannot divine what might have transpired at hearing if the issues had been raised properly. We must, therefore, hold that appellee waived this theory by not raising it in his suppression application. *Commonwealth v. Jackson,* 464 Pa. 292, 346 A.2d 746 (1975); *Commonwealth v. Mitchell, supra.*

The order of the lower court granting a new trial is reversed and the case is remanded for sentencing.

SPAETH, J., concurs in the result.

HOFFMAN, J., files a dissenting opinion in which CERCONE, J., joins.

HOFFMAN, Judge, dissenting:

The Commonwealth, appellant in the instant case, raises only one contention, that "the trial court erred in granting appellee's motion for a new trial where the search held illegal by the trial court merely provided information which accelerated appellee's inevitable arrest." The Majority reverses the lower court's order granting a new trial and remands for sentencing. I dissent.

Appellee was arrested in Philadelphia on May 25, 1975, and charged with rape[1] and burglary.[2] On October 31, 1975, the lower court denied appellee's pretrial motion to suppress a post-arrest statement. A jury found appellee guilty of both charges on November 7, 1975. Appellee subsequently filed post-verdict motions. On December 30, 1975, the lower court denied appellee's motion in arrest of judgment, but granted his motion for a new trial. After filing a Rule 1100(c) petition, Rule 1100, Pa.R.Crim.P., 19 P.S.Appendix,[3] the Commonwealth filed the instant appeal.

I accept the Majority's factual history of the instant case, but summarize briefly: first, the rape victim gave the police a sketchy description of her assailant; another woman in the apartment complex told the police that "John" from apartment A–6 had requested admittance into her apartment around the time of the rape; and an anonymous caller told the police that "John" who committed the rape, was then in apartment A–6. Second, based on that information, police attempted peaceful entry into apartment A–6, but when no one responded, they broke into the apartment. Once in the apartment, the police found a private phone directory which indicated appellee's name and included a listing for appellee's mother's phone. Appellee's mother responded to the police phone call and told them that her son was asleep in her apartment. Third, the police took appellee to Philadel-

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 3121.

2. The Crimes Code, supra; 18 Pa.C.S. § 3502.

3. See *Commonwealth v. O'Shea*, 465 Pa. 491, 350 A.2d 872 (1976).

phia's West Detective Division where he waived his *Miranda* rights and gave a statement.[4]

The lower court granted appellee a new trial because it believed that the search of appellee's apartment was illegal. Therefore, the court did not reach the issue of whether the police had probable cause to arrest the appellee prior to the illegal search. The search was illegal because it was conducted without a warrant; thus, the court did not have to decide the issue of probable cause. It concluded that the statement was the product of the illegal entry into the apartment.

The Majority concludes that the lower court erred in holding that the statement was the product of the illegal entry. As the Majority states, a Fourth Amendment violation is only the first step in determining whether evidence must be suppressed. The evidence need not be suppressed if obtained "by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). See also, *Commonwealth v. Cunningham,* 471 Pa. 577, 370 A.2d 1172 (1977); *Betrand Appeal,* 451 Pa. 381, 303 A.2d 486 (1973). The Court concludes that because the information discovered by the police in the apartment only hastened appellee's arrest, it did not cause appellee to confess. See *Leek v. Maryland,* 353 F.2d 526 (4th Cir. 1965); *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972).

The Majority does not reach the more difficult question of whether the police had probable cause to arrest in the first instance. As his Statement of Questions indicates, appellee has raised that argument in his brief before this Court: "Did the Court err in granting the Appellee's Motion for a new trial where the confession used to convict him was the consequence of an arrest that was not the result of probable cause or pursuant to an arrest warrant?"

4. Appellee attempted to exculpate himself by saying that he broke into the apartment to introduce himself to the victim and that she then consented to have intercourse.

Initially, we must be aware of two cornerstone principles of appellate review: (1) "On appeal, it is the judgment or order itself which is the subject of review, not the reasons given by the court below in support of its action." *Commonwealth v. Marks*, 442 Pa. 208, 210, 275 A.2d 81, 82 (1971). Thus, " . . . we may affirm the judgment of the lower court where it is correct on any legal ground or theory disclosed by the record, regardless of the reason or theory adopted by the trial court." *Lambert v. Pittsburgh Bridge and Iron Works*, 227 Pa.Super. 50, 56, 323 A.2d 107, 110 (1974). See also, *Commonwealth v. Whitehouse*, 222 Pa.Super. 127, 292 A.2d 469 (1972) (opinion by WATKINS, J., now P. J.); 2 P.L.E. Appeals § 339. (2) In reviewing the record, we must read the evidence in the light most favorable to the verdict winner. *Ballinger v. Howell Mfg. Co.*, 407 Pa. 319, 180 A.2d 555 (1962); *Lambert v. Pittsburgh Bridge and Iron Works*, supra.

Those principles would apparently dictate that we address the issue of probable cause before we could reverse the lower court. If we were to conclude that the police lacked probable cause, we would then have to determine whether the illegal arrest (not the illegal search) would require suppression of appellee's statement, thereby dictating the grant of a new trial and mandating that we affirm the lower court's order.

However, the Majority holds that the issue of whether the police had probable cause at the time of the arrest is not properly before us because appellee's pretrial application did not raise the specific ground that the police lacked probable cause to arrest. The Court relies on *Commonwealth v. Mitchell*, 464 Pa. 117, 124, 346 A.2d 48, 52 (1975), in finding that appellee has waived the claim now raised:

"Appellate Courts render a disservice to judicial economy and the efficient operation of our court system where they freely accept issues that could have and should have been first presented to the courts below for their consideration.

[S]uch a procedure . . . deprives the reviewing court of the benefit of the reasoning of the lower court on the issues at hand . . .. Where the parties below were not aware that a particular issue is being raised, it [is] quite likely that testimony germane to that issue would be overlooked or believed unnecessary and consequently not presented." I am unpersuaded by the Court's reliance on *Mitchell*: *Mitchell* held that a *Futch*[5] claim could not be raised for the first time on appeal when the only issue raised below was whether the appellant's confession was voluntary. It is obvious that the record developed at the pretrial hearing will be significantly different in each instance. Further, although there is some broad language in *Mitchell,* the Supreme Court has indicated that *Mitchell* is not intended to have the broad reach which the Majority urges. See *Commonwealth v. Polof,* 238 Pa.Super. 565, 362 A.2d 427 (1976), rev'd and remanded, 248 Pa. 26, 374 A.2d 1299 (1976). Finally, I believe that the interests underlying the waiver doctrine have been protected in the instant litigation: Strict application of that doctrine " . . . ensures the making of a complete record in that testimony and other germane evidence on the issue will be received. An attorney's diligent preparation is rewarded, and he is precluded from relying on an appellate court to bail out his poor performance at trial." *Commonwealth v. Polof,* 238 Pa.Super. at 576, 362 A.2d at 433 (dissenting opinion by HOFFMAN, J.).

In the instant case, the Commonwealth was obviously on notice that the legality of appellee's arrest was in issue. It had the burden of going forward with evidence at the suppression hearing. Reasonable preparation dictated that the Commonwealth present evidence which showed that it had acted legally. Further, a review of the suppression hearing in the instant case indicates that the Commonwealth did just that—it attempted to elicit a full account of the pre-arrest evidence gathered by the police.

5. *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972).

134

Thus, I believe that we should reach the question concerning the legality of appellee's arrest. Further, I think that the case law is clear that the Commonwealth lacked probable cause to arrest the appellee. See *Commonwealth v. Garvin,* supra; *Commonwealth v. Nicholson,* 239 Pa.Super. 175, 361 A.2d 724 (1975). Once we conclude that the arrest was illegal, there is no question that the statement would properly be suppressed. *Commonwealth v. Barnett,* 471 Pa. 34, 369 A.2d 1180 (1977); *Commonwealth v. Whitaker,* 461 Pa. 407, 336 A.2d 603 (1975); *Commonwealth v. Cephas,* 447 Pa. 500, 291 A.2d 106 (1972).

Therefore, I would affirm the order of the lower court.

CERCONE, J., joins in this dissenting opinion.