427 A.2d 141

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Robert STAMPS, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 22, 1980.

Decided March 13, 1981.

532

John W. Packel, Chief, Appeals Div., Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

KAUFFMAN, Justice.

On February 24, 1976, appellant, Robert Stamps, was arrested and charged with possession and possession with intent to deliver a controlled substance.[1] A search, pursuant to warrant, had uncovered twenty-five (25) packets of heroin in appellant's apartment. A timely motion to suppress the

---

1. The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 13, *as amended*, Act of October 26, 1972, P.L. 1048, No. 263, § 1, 35 P.S. § 780–113.

evidence was filed, but after a hearing, denied. On October 29, 1976, appellant was tried without a jury and convicted on both charges. Post-trial motions were filed, and on April 19, 1977, an arrest of judgment was granted with respect to the charge of possession with intent to deliver;[2] all other motions, however, were denied and a sentence of six to twelve months was imposed. Thereafter, an appeal was taken to the Superior Court, and the judgment of sentence was affirmed. *Commonwealth v. Stamps*, 260 Pa.Super. 108, 393 A.2d 1035 (1978). We granted allocatur and now affirm.[3]

On Thursday, February 19, 1976, a reliable informant[4] told Police Officer Victor Marcone (1) that "in the past 10 days" he had been inside appellant's second floor apartment at 1211 South 47th Street in Philadelphia; (2) that he had observed appellant with approximately ten bundles of heroin in his possession; (3) that appellant told him he was going to sell the "stuff" in one-half hour for $800.00 to a person named "Roy;" (4) that he also had seen appellant on another occasion leave his apartment with three bundles of heroin to sell to two different persons; (5) that customers "always" called appellant's telephone number before visiting his apartment to purchase drugs.[5]

Thereafter, on Monday, February 23, 1976 from 11:20 a. m. to 11:50 a. m., police conducted a surveillance of the building in which appellant's apartment was located. At that time, they observed two persons enter the building and leave after a short period. On the basis of an affidavit prepared by Officer Marcone immediately after conducting

2. The evidence was found to be insufficient to show an intent to deliver or sell.

3. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 724(a).

4. Appellant does not challenge the reliability of the informant who, on a number of occasions over the past two years, had provided police with reliable information concerning criminal activity.

5. Officer Marcone confirmed that the telephone number supplied by the informant was registered in appellant's name at his 47th Street address.

the surveillance, a search warrant was issued on February 23, 1976. The following day Officer Marcone went to appellant's apartment building with the warrant, knocked on the front door, identified himself as a police officer, and waited for about two and one-half minutes before being admitted. While waiting, he heard someone running from the door.

After being admitted by appellant, Officer Marcone proceeded upstairs to appellant's second floor apartment, where he discovered a second male sitting in the kitchen staring into an open oven.[6] Another man then walked down from the third floor apartment into the kitchen of appellant's apartment. Thereafter, Officer Marcone searched the apartment and found twenty-five packets of heroin under the cushion of a couch located in the "combination parlor-bedroom."[7] He also discovered a telephone bill and an electric bill for the apartment addressed to appellant. After he was arrested, appellant, who kept his clothing in the kitchen and in the parlor-bedroom, was permitted to dress.

Appellant here raises two issues: (1) whether the affidavit prepared by Officer Marcone was based on stale information which could not support a finding of probable cause, and (2) whether the evidence adduced at trial was sufficient to establish appellant's possession of contraband in light of the presence of other persons in the apartment at the time of the search.

## I

The probable cause portion of the affidavit provided:

I Plcm. # 4334 having received information from a reliable informant 2–19/76 that he was inside of the above location in the past 10 days and did see [Robert Stamps] have in his possession approx. 10 bundles of alleged Heroin which he stated to the informant was for one person named Roy who was coming over in a half an hour to buy

---

6. When asked by the officer why he was staring into the oven, this person replied that he was "meditating."

7. The officer described the area as a "combination parlor-bedroom" because the apartment contained no separate sleeping area.

the stuff for $800.00. This informant stated that there were approx. five other person [sic] in this apt. and that he would not be shore [sic] who to blame if it link [sic] out to the cops about this certain transaction. The informant also stated that he on another date seen the above named person called (BROTHER ROB) leave this apt. with three bundles of heroin on his possession and was going to the bar to sell them to two different persons. This informant also stated that this person [sic] phone number was 349-8533 and that before any of the aboves [sic] customers come over they always call. This informant in the past two years has given me information which has resulted in a number of arrests with evidence confiscated on all arrests. A check with the phone company of the number supplied to me by this informant was made and found it to be in the name of the above living at the above location. On 2/23/76 from approx. 11:20 a. m. to 11:50 a. m. a surveillance was conducted at the above location and two persons were seen entering and leaving this location after staying only a short period of time, one of the persons being a white male. Due to the information received from this reliable informant along with a phone check an [sic] a surveillance I believe that the above named person is selling and storing large quantities of Heroin from inside of his apartment.

Appellant contends that the informant's observation of criminal conduct no more than fourteen days prior to the issuance of the warrant was too remote to support a finding of probable cause at time of issuance, and that the evidence discovered pursuant to the warrant therefore should have been suppressed. We disagree.

■ It is well settled that for a search warrant to be constitutionally valid, the issuing authority must decide that probable cause exists at the time of its issuance.[8] This

---

8. U.S.Const. amend. IV. "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search

determination must be based on facts described within the four corners of the supporting affidavit, *see Commonwealth v. Simmons*, 450 Pa. 624, 626, 301 A.2d 819, 820 (1973); Pa.R.Crim.P. 2003(a), and closely related in time to the date of issuance of the warrant. *Sgro v. United States*, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932); *Commonwealth v. Tolbert*, 492 Pa. 576, 424 A.2d 1342 (1981); *Commonwealth v. Jackson*, 461 Pa. 632, 337 A.2d 582, *cert. denied*, 423 U.S. 999, 96 S.Ct. 432, 46 L.Ed.2d 376 (1975); *Commonwealth v. Eazer*, 455 Pa. 320, 312 A.2d 398 (1973); *Commonwealth v. Simmons*, 450 Pa. 624, 301 A.2d 819 (1973); *Commonwealth v. Shaw*, 444 Pa. 110, 281 A.2d 897 (1971). Otherwise, evidence of criminal activity " . . . will become so attenuated with the passage of time as to be nonexistent at the time the warrant is applied for and is issued." [9]

■ Courts have been reluctant, however, to set a hard and fast rule as to what constitutes staleness; such a determination must be made on a case by case basis.[10] Mere lapse of time between discovery of criminal activity and issuance of the warrant will not necessarily dissipate probable cause; a showing that the criminal activity is likely to have continued up to the time of issuance of the warrant will render otherwise stale information viable. *United States v. Harris*, 403 U.S. 573, 579 n.2, 91 S.Ct. 2075, 2079 n.2, 29 L.Ed.2d 723 (1971); *see Tolbert*, 492 Pa. at 579, 424 A.2d at 1344; *Eazer*, 455 Pa. at 324, 312 A.2d at 400; *Shaw*, 444 Pa. at 113–14, 281 A.2d at 899.

In *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), an affidavit similar to the one now before us declared that a reliable informant had purchased

should be conducted." *Commonwealth v. Thomas*, 448 Pa. 42, 52, 292 A.2d 352, 357 (1972).

**9.** Mascolo, *The Staleness of Probable Cause in Affidavits for Search Warrants: Resolving the Issue of Timeliness*, 43 Conn.B.J. 189, 190 (1969).

**10.** *See Eazer*, 455 Pa. at 324, 312 A.2d at 400; *Shaw*, 444 Pa. at 114, 281 A.2d at 899; *United States v. Dauphinee*, 538 F.2d 1, 5 (1st Cir. 1976); *See also* 100 A.L.R.2d 534 and authorities cited therein.

liquor illegally from the accused "within the past two weeks," and that he had also made similar purchases for a period of over two years. Rejecting the accused's contention that the information was stale, the Supreme Court of the United States concluded that there was a reasonable basis for the search. Likewise, in *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972), an affidavit in support of a search warrant recited approximately four observations of illegal whiskey sales from June to September, 1970. Although the last observation occurred three weeks before issuance of the warrant, the Court held that the affidavit established probable cause since it ". . . properly recite[d] facts indicating activity of a protracted and continuous nature . . .," thereby making the passage of time less significant than in the case of an isolated observation.[11]

■ In determining whether the affidavit in question was sufficient to establish probable cause, we recognize that affidavits supporting search warrants normally are prepared ". . . by nonlawyers in the midst and haste of a criminal investigation." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965). They therefore should be interpreted in a "common sense and realistic" fashion rather than in a hypertechnical manner. *Ventresca*, 380 U.S. at 108, 85 S.Ct. at 745; *Commonwealth v. Greco*, 465 Pa. 400, 406, 350 A.2d 826, 829 (1976); *Commonwealth v. Matthews*, 446 Pa. 65, 71, 285 A.2d 510, 513 (1971). Moreover, the probable cause determination of the issuing authority must be accorded great deference. *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969); *Ventresca*, 380 U.S. at 108–09, 85 S.Ct. at 745–46; see *Matthews*, 446 Pa. at 71, 285 A.2d at 513.

Here, the affidavit reported that the informant had been inside appellant's apartment "in the past 10 days" and had

11. *Cf. Gossett v. Commonwealth*, Ky., 426 S.W.2d 485 (1968) (informant's single observation "in the last 10 days" of whiskey on premises for illegal sale was not too remote to establish probable cause.)

observed appellant in possession of large quantities of heroin for sale on two separate occasions: (1) appellant told the informant he was going to sell ten bundles of heroin in "half an hour" to a person named "Roy", for $800.00; (2) the informant saw appellant leave his apartment with three bundles of heroin for sale to two other people.[12] These incidents revealed on-going possession of *large quantities* of heroin for sale within fourteen days prior to the issuance of the warrant. Under these circumstances, we conclude that the issuing authority reasonably determined appellant was engaged in a continuing course of illegal conduct and that narcotic drugs were likely to be present in his apartment on the day the warrant was issued. Accordingly, we hold that probable cause was established and that the search warrant was validly issued.[13]

## II

Relying on our decisions in *Commonwealth v. Fortune*, 456 Pa. 365, 318 A.2d 327 (1974); *Commonwealth v. Davis*, 444 Pa. 11, 280 A.2d 119 (1971); and *Commonwealth v. Tirpak*, 441 Pa. 534, 272 A.2d 476 (1971), appellant next contends that since two other parties present in his apartment at the time of the search had equal access to the area where the contraband was found, the evidence at trial was insufficient to convict him of illegal possession of heroin. We recognize that " . . . the fact of possession loses all persuasiveness if persons other than the accused had equal access . . . to the place in which the property was discovered . . . ." *Fortune*, 456 Pa. at 369, 318 A.2d at 329, *Davis* 444 Pa. at 16, 280 A.2d at 121. Here, however, we disagree with appellant's assertion that two other parties had equal access

12. Although the language is somewhat ambiguous on this point, we conclude that a fair reading of the affidavit as a whole places both observations within the ten day period referred to by the informant.

13. Under these circumstances, we need not reach the issue of whether the surveillance had any probative value. We note, however, that we are unwilling to infer from the mere fact that a surveillance was conducted that the police lacked probable cause without it.

to the parlor-bedroom.[14]   The evidence was sufficient to establish that appellant was the sole tenant of the apartment,[15] and exclusive control over the contents of a residence may properly be inferred from a showing that the accused is the only occupant or tenant of that residence.  *Commonwealth v. DeCampli*, 243 Pa.Super. 69, 364 A.2d 454 (1976); *State v. Brown*, 80 N.J. 587, 404 A.2d 1111 (1979).

Our standard of review in determining the sufficiency of the evidence is:

> whether, accepting as true all of the evidence, be it direct or circumstantial, and all reasonable inferences arising therefrom upon which, if believed, the trier of facts could properly have based the verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted.  (Citations omitted)

*Commonwealth v. Malone*, 444 Pa. 397, 398, 281 A.2d 866, 867 (1971).  Considered in this light, we conclude that the evidence and the "reasonable inferences arising therefrom," were sufficient to prove beyond a reasonable doubt that appellant, as the sole tenant of the apartment, was in constructive possession of the heroin hidden under a sofa cushion in the parlor-bedroom of that apartment.  The cases cited by appellant are inapposite.

In *Fortune, supra,* we reversed the conviction of the owner and resident of a two-story private home for illegal possession of narcotic drugs when she was upstairs at the time police entered and four other persons were downstairs with greater access to the kitchen floor area where the drugs were found.  As in *Fortune,* the accused in the instant case was the sole resident of the premises where the contraband was discovered.  The similarity, however, ends there.

14.  One of the parties was on the third floor when police entered appellant's apartment, the other was sitting in the kitchen staring into the oven, and in his Brief, appellant refers to them as "invitees".

15.  Both the telephone and electric bills for the apartment were in appellant's name and his clothes were kept there.  *See Davis*, 444 Pa. at 16, 280 A.2d at 121 (indicating that utility and telephone bills in apartment are indicia of possessory interest therein.)

In *Fortune,* the drugs were found in plain view in an area to which the four other parties present had more immediate access than the owner. Here, however, there is no evidence that either of the two other parties present at the time of the search had more immediate access than appellant to the area where the drugs were found.[16]

In *Davis, supra,* we reversed the defendant's conviction for illegal possession of stolen goods where they were found in a locked cupboard in the basement of an apartment building in which his mistress lived. Unlike the instant case, there was no evidence that the defendant had any type of possessory interest in the building, nor was there any evidence that he had access to the locked cupboard in the basement.

Likewise, in *Tirpack, supra,* the convictions of four defendants were reversed where none of them had a possessory interest in the premises and the area in which drugs were found was equally accessible to other persons present at a party.

The order of the Superior Court is affirmed.

NIX, J., concurs in the results.

O'BRIEN, C. J., and ROBERTS, J., filed dissenting opinions.

O'BRIEN, Chief Justice, dissenting.

The majority today incorrectly, in my view, holds that the evidence presented at trial was sufficient to sustain appellant's conviction for possession of a controlled substance. As

16. Appellant also relies on *Commonwealth v. Schulhoff,* 218 Pa.Super. 209, 275 A.2d 835 (1971) where the court reversed the conviction of the tenant of an apartment for possession of narcotics. At the time police executed the search, four persons, including the tenant and his co-tenant, were sleeping in rooms other than the living room where the contraband was discovered. Significantly, in that case, there was a co-tenant who undoubtedly had equal access to the common living room area. Here, however, there is no evidence that either of the two persons present in appellant's apartment was a co-tenant. Nor is there evidence that either had any access to the parlor-bedroom.

I believe the evidence, when viewed in light of our case law on the subject, is insufficient, I believe appellant must be discharged.

In *Commonwealth v. Fortune*, 456 Pa. 365, 368–69, 318 A.2d 327, 328 (1974), we stated:

"When the illegal possession of contraband is charged, the evidence must establish that the appellant had a conscious domain over the contraband. *Commonwealth v. Davis*, 444 Pa. 11, 280 A.2d 328 (1971). The illegal possession of narcotic drugs is a crime which 'by its very nature is unique to the individual. By definition, the possessor is the only person who could commit the crime. Guilt by association ... is unacceptable.' *Commonwealth v. Reece*, 437 Pa. 422, 427, 263 A.2d 463, 466 (1970). See also *Commonwealth v. Tirpak*, 441 Pa. 534, 272 A.2d 476 (1971). The presence of one person in a group of people at the scene 'is not of critical import in drug possession cases.' *Commonwealth v. Reece*, [supra, 437 Pa. at 427, 263 A.2d at 466]. See also *Commonwealth v. Tirpak [supra]*. '[T]he fact of possession loses all persuasiveness if persons other than the accused had equal access ... to the place in which the property was discovered ..." *Commonwealth v. Davis, supra* at 16, 280 A.2d at 121, quoting 9 J. Wigmore, Evidence § 2513 (3d ed. 1940)...." (Emphasis added.)

Instantly, appellant was not alone in his two room apartment; rather, the record indicates that another individual was in the kitchen. The police officer himself testified that he waited approximately two and one-half minutes after announcing his presence before he was admitted into the apartment. The contraband was discovered under a cushion in the "parlor bedroom." The proposed distinctions offered by the majority to the above cited cases are not, in my view, persuasive.

While it is true that appellant was the lessee of the apartment where the heroin was seized, our law requires more. Thus, in my view, had the heroin been discovered in a place that was peculiarly accessible to appellant, such as in a

dresser in his bedroom or in a hiding place that would not be obvious to anyone in the apartment, a conviction for possession of the heroin would be allowable. Here, however, it is equally likely that appellant's guest could have placed the heroin under the cushions of the couch before he began meditating, and thus, on the evidence presented instantly, appellant's conviction cannot stand. *See, Commonwealth v. Chenet*, 473 Pa. 181, 373 A.2d 1107 (1977). I would order appellant to be discharged and hence this dissent.

ROBERTS, Justice, dissenting.

For the reasons set forth in this Court's recent decision in *Commonwealth v. Tolbert*, 492 Pa. 576, 424 A.2d 1342 (1981), reaffirming the constitutional requirement that the affidavit supporting a search warrant be based upon fresh information, I would reverse.

Contrary to the assertion of Mr. Justice Kauffman, the two incidents mentioned in the search warrant affidavit clearly do not reveal "on-going possession" of heroin by appellant up to the time the search warrant was issued. The Commonwealth has utterly failed to establish that these two independent occasions of criminal activity at a *prior* time are connected to *continuous* criminal activity. These two incidents are: (1) at some time at least four days, and perhaps as many as fourteen days, prior to the execution of the search warrant an informant observed "10 bundles of alleged Heroin" in appellant's apartment which were to be sold and removed within half an hour of the informant's observation; and (2) on an unspecified date, this same informant saw appellant leave appellant's apartment with three bundles of heroin to sell to two individuals at a bar.

The remaining facts alleged in the affidavit in no respect link these two occasions of alleged possession of heroin to a continuous period of possession. These facts simply are: (1) the phone number alleged by the informant to be appellant's was in fact appellant's phone number; (2) customers "always call" the number before arriving at appellant's home (no specific incidents of customer calls are alleged); and (3)

during a twenty-minute period on the morning of February 23, 1976, two persons were seen entering and leaving the building in which appellant lives. It must be obvious that these insubstantial, additional facts (of which only the second fact is even relevant), together with the two incidents recounted, are insufficient to provide probable cause to believe that appellant was in possession of narcotics at the time the search warrant was issued. See *Commonwealth v. Tolbert*, supra.

Where no evidence of present criminal activity is offered to the issuing authority, the issuance of a search warrant is constitutionally invalid because, without such information, it is impossible for a neutral and detached magistrate to determine whether there is probable cause to search. *Commonwealth v. Tolbert*, supra, 492 Pa. at 580, 424 A.2d at 1344. *Commonwealth v. Eazer*, 455 Pa. 320, 325, 312 A.2d 398, 400 (1973). As this Court stated, " '[a] search warrant must issue, if at all, upon an existing cause. A search warrant is no general arm for ferreting out crime, but a special proceeding, based on present cause, hedged by strict constitutional provisions. . . .' " *Commonwealth v. Shaw*, 444 Pa. 110, 114, 281 A.2d 897, 899 (1971) quoting *People v. Cippewa Circuit Judge*, 226 Mich. 326, 328, 197 N.W. 539, 540 (1924). Accord, *Commonwealth v. McCants*, 450 Pa. 245, 249, 299 A.2d 283, 286 (1973).

The opinion of Mr. Justice Kauffman relies on *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (plurality). Contrary to its assertion, this case did not involve an affidavit "similar to the one now before us." There, the affidavit alleged not only that illegal liquor sales had occurred "within the past two weeks" but also that "these recent purchases were part of a history of purchases over a two-year period." Id. at 579, 91 S.Ct. at 2079–80. Similarly, in *United States v. Johnson*, 461 F.2d 285 (10th Cir. 1972), also relied upon in the opinion, the affidavit revealed a recent four-month history of illegal sales of non-tax-paid liquor. No similar history establishing a continuity of criminal activity is contained in the affidavit before this Court.

544

Here, as in *Commonwealth v. Tolbert*, supra, *Commonwealth v. Jackson*, 461 Pa. 632, 337 A.2d 582, cert. denied, 423 U.S. 999, 96 S.Ct. 432, 46 L.Ed.2d 376 (1975), *Commonwealth v. Eazer*, supra, *Commonwealth v. Simmons*, 450 Pa. 624, 301 A.2d 819 (1973) and *Commonwealth v. Shaw*, supra, the requirement of establishing criminal continuity has not been satisfied. Indeed, in a closely related context, this Court held invalid, for lack of probable cause, a search warrant executed fifteen days after its issuance. *Commonwealth v. McCants*, 450 Pa. 245, 299 A.2d 283 (1973). Our Court recognized that

"[t]here are times when the facts and circumstances presented to the magistrate remain unchanged long after the warrant is issued. However, once it is recognized that it is *possible* for the facts and circumstances to change with the passing of time, a redetermination of probable cause is constitutionally required."

Id., 450 Pa. at 249, 299 A.2d at 286 (emphasis in original). Accord, *Commonwealth v. Eazer*, supra, 455 Pa. at 326, 312 A.2d at 401; *Commonwealth v. Shaw*, supra, 444 Pa. at 113–14, 281 A.2d at 899. As this Court observed,

" '[i]t is one thing to expect the magistrate to give a commonsense reading to facts set forth and to draw inferences from them. It is quite another thing to expect the magistrate to reach for external facts and to build inference upon inference in order to create a reasonable basis for his belief that a crime is *presently* being committed' [*Rosencranz v. United States*, 356 F.2d 310, 317 (1st Cir. 1966)] (emphasis added)."

*Commonwealth v. Simmons*, supra, 450 Pa. at 631, 301 A.2d at 823.

In the absence of facts establishing the required element of continuity, the affidavit submitted to the magistrate did not provide probable cause to believe that narcotics were *then* on appellant's premises. Accordingly, the trial court erred in failing to grant appellant's motion to suppress the evidence seized pursuant to a constitutionally deficient warrant. To conclude otherwise is to permit the circumvention

of the Fourth Amendment's probable cause requirement by the use of a stale search warrant. See *Commonwealth v. Eazer*, supra; *Commonwealth v. McCants*, supra.

The judgment of sentence should be reversed and a new trial granted.