565 A.2d 472

**COMMONWEALTH of Pennsylvania**

v.

**Ricky Lee BURKHOLDER and Harvey L. Burkholder, Appellants.**

Superior Court of Pennsylvania.

Submitted June 13, 1989.

Filed Oct. 24, 1989.

254

Arthur T. McDermott, Carlisle, for appellants.

John M. Eakin, Dist. Atty., Mechanicsburg, for the Com., appellee.

Before BROSKY, BECK and HOFFMAN, JJ.

BROSKY, Judge.

This is an appeal from the judgment of sentence following a Bench finding of guilt of violations of various provisions of the Game Law, 34 Pa.C.S. 101 *et seq.* Specifically, appellant, Harvey L. Burkholder, was charged with violating § 2323(a)(1), Tagging and Reporting Big Game Kills; § 2307(a), Unlawful Taking or Possession of Game or Wildlife; § 2504(a), Shooting on or Across Highways; and § 2308(a)(7), Unlawful Devices and Methods. Appellant, Ricky Lee Burkholder, was charged with violating § 2323(a), Tagging and Reporting Big Game Kills, and § 2307(a), Unlawful Taking or Possession of Game or Wildlife.

The issues raised on appeal are (1) whether the search and seizure conducted at appellant, Harvey Burkholder's residence was in violation of Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution; (2) whether evidence seized at the scene and retained in the possession of the Game Warden for six weeks should have been suppressed; (3)

whether the Commonwealth proved a charge of conspiracy against the appellants; (4) whether the trial court abused its discretion in denying a view of the scene; and (5) whether the court abused its discretion by failing to reopen the trial to hear after-discovered evidence. Because we find that the items were seized pursuant to a stale search warrant, we reverse and remand for a new trial.

The incident giving rise to the above charges occurred on December 14, 1987, in Cumberland County. Witnesses, Mr. and Mrs. Bruce Davis, while standing on the porch of their home, observed appellant, Harvey L. Burkholder, alight from his pick-up truck on a nearby roadway and fire several shots toward a number of deer. Apparently having shot one of the deer, he then re-entered the vehicle and drove in the direction of the animals.

At the same time, Mrs. Davis drove to where the pick-up truck was then parked and observed Mr. Burkholder fire two more shots at the animal, killing it.

At that time, Mr. Burkholder's son, appellant, Ricky Lee Burkholder, who had been hunting with a third party, appeared on the scene. He assisted his father in dragging the animal to the truck and then left the scene with his father. Although Ricky Lee Burkholder later claimed to game officials that he, not his father, had shot the deer and had attached his tag to it, the trial court found from the evidence presented at trial that Ricky Lee Burkholder had not shot the deer and was aware that it was not properly tagged when removed from the scene.

After the shooting incident, Mrs. Davis reported to the Game Warden that Harvey Burkholder had illegally shot at the deer from the road. Two days after the incident, the Game Warden searched the area of the road from where Mrs. Davis said Harvey Burkholder had been shooting and found two spent .30–06 cartridges, which the Warden retained in his possession.

Approximately six weeks later, on January 30, 1988, the Game Warden, accompanied by other officers, conducted a

search at the Harvey Burkholder residence. Although the warrant authorized only the seizure of "all firearms chambered for the .30–06 shell," the officers also seized both live and spent .30–06 ammunition, in addition to firearms. The rifles and ammunition were turned over to the State Police Laboratory for analysis. At this time, the Game Warden also turned over to the State Police Laboratory the spent cartridges he had found at the scene two days after the shooting.

The State Police Laboratory report revealed that the spent cartridges found at the scene by the Game Warden two days after the shooting incident were fired from one of the rifles seized at the Harvey Burkholder residence.

Appellants were subsequently charged with various violations of the Game Law, as noted above.

Appellants were found guilty on all charges at a hearing before a District Justice and, following appeal, were again found guilty at a *de novo* hearing before the Court of Common Pleas of Cumberland County. Appellants' motion for an arrest of judgment or for a new trial was denied. The court sentenced appellants to pay the costs of prosecution. In addition, the court imposed fines totalling $1,100 against Harvey Burkholder and $600 against Ricky Burkholder. This appeal followed.

The first issue to be addressed is the propriety of the search and seizure conducted at the Harvey Burkholder residence. Appellants contend, among other things, that the issuance of the warrant was constitutionally invalid because the warrant was not issued until six weeks after the shooting of the deer, resulting in the issuance of a stale warrant. Appellants support their argument by citing *Commonwealth v. Jackson*, 461 Pa. 632, 638, 337 A.2d 582, 585 (1975), which states:

> Before a magistrate may issue a constitutionally valid search warrant he must be furnished with information sufficient to persuade a reasonable man that probable cause to conduct a search does exist. The requisite probable cause must exist at the time the warrant is

issued and be based on *facts which are closely related in time to the date of the issuance,* for it is well-settled that stale information cannot supply the probable cause necessary for the issuance of a search warrant.

(Emphasis added). (Citations omitted).

█ Case law holds that if the district justice is presented with evidence of criminal activity at some prior time, it must also be established that the criminal activity continued up to the time of the request for the warrant in order to support a finding of probable cause. *Commonwealth v. Jones,* 506 Pa. 262, 269, 484 A.2d 1383, 1387 (1984). In the present case there was no showing that the criminal activity continued up to the time of the issuance of the warrant. The determination must be made, then, as to what constitutes staleness when no evidence of continued criminal activity is presented.

█ Courts have been reluctant to set a hard and fast rule as to what constitutes staleness; such a determination must be made on a case by case basis. *Commonwealth v. Stamps,* 493 Pa. 530, 536, 427 A.2d 141, 144 (1981). The following guidelines for deciding whether information contained in a search warrant affidavit is stale were set forth in *Commonwealth v. Klimkowicz,* 331 Pa.Super. 75, 479 A.2d 1086 (1984). The magistrate must consider the nature and quantity of items to be seized, the time lapse involved and the ease with which the items may be disposed. The applicable standard for determining the time limits to be placed on search warrants is one of reasonableness. 331 Pa.Super. at 81, 479 A.2d at 1089.

*Klimkowicz* involved a time lapse of five weeks between the commission of the crime and the execution of the warrant. There, the crime committed was burglary, and the court, considering the "hot" nature of the items and the difficulty of disposing of such items, found that it was not unreasonable for the magistrate to believe that the items described could still be found at the defendant's home five

weeks after the crime. The warrant was therefore found valid.

In the instant case, the district justice apparently assumed that the appellant would still have at his home at the date of issuance of the warrant the rifle used in the shooting of the deer six weeks earlier. However, appellant testified that he did not possess the rifle in question at the time of the incident and only acquired it two weeks later. His testimony illustrates that the possibility of a change in circumstances existed. Here, as contrasted with *Klimkowicz*, appellant's rifle was not "hot," and was therefore easily disposable. Appellant had ample time either to dispose of the weapon used to kill the deer or, as he testified, to acquire it from another party. As the court in *Commonwealth v. McCants*, 450 Pa. 245, 299 A.2d 283 (1973), stated:

> There are times when the facts and circumstances presented to the magistrate remain unchanged long after the warrant is issued. However, once it is recognized that it is *possible* for the facts and circumstances to change with the passing of time, a redetermination of probable cause is constitutionally required.

The *McCants* court further pointed out:

> A search warrant must issue, if at all, *upon an existing cause*. A search warrant is no general aim for ferreting out crime, but a special proceeding, based on *present cause*, hedged by tacit constitutional provisions, which must be *speedily executed*.

(Emphasis supplied). 450 Pa. at 240, 299 A.2d at 286.

■ We find that because of the length of time that elapsed between the shooting of the deer and the date of the warrant and the lack of proof of criminal activity, the evidence seized at the home of appellant Harvey Burkholder was the fruit of a search without a valid warrant. This evidence, therefore, should have been suppressed.

Because we are remanding for a new trial, we need not consider appellants' second and fifth claims.

Appellants' third claim is that the evidence was insufficient to convict Ricky Burkholder of the conspiracy provisions of 34 Pa.C.S. § 2307(a).

■ When reviewing a sufficiency of the evidence claim, we view the evidence in the light most favorable to the Commonwealth as verdict winner. *Commonwealth v. Carbone*, 375 Pa.Super. 261, 544 A.2d 462, alloc. gr. in 520 Pa. 602, 553 A.2d 964 (1988). We then determine if there is sufficient evidence to find every element of the crime beyond a reasonable doubt; the Commonwealth may sustain its burden of proof by wholly circumstantial evidence. *Id.* Circumstantial evidence may be used to establish a conspiracy. *Commonwealth v. Cooke*, 342 Pa.Super. 58, 492 A.2d 63 (1985). Among the circumstances relevant to prove conspiracy are (1) association between alleged conspirators; (2) knowledge of the commission of a crime; (3) presence at the scene; and (4) participation in the object of the conspiracy. *Id.* While such circumstances are insufficient standing alone, an accused may be linked to a conspiracy beyond a reasonable doubt when the circumstances are viewed in conjunction with each other and in context to their occurrence. *Id.*

■ Our review of the evidence reveals that it was sufficient to find that appellants conspired to "hunt for or take or possess, use, transport or conceal any game or wildlife unlawfully taken or not properly marked...." 34 Pa.C.S. § 2307(a). Two witnesses observed Harvey Burkholder shoot at, from a highway, and apparently hit an anterless deer. Burkholder then slit the throat of the wounded deer, in order to relieve its suffering. Ricky Burkholder, Harvey's son, then appeared and helped his father remove the deer from the scene. Harvey Burkholder never affixed a "kill tag" to any deer, since the tag was still affixed to his hunting license the following day when confronted by a game official. Harvey Burkholder claimed that Ricky had shot and tagged (witnesses stated that the deer was never tagged by anyone) the deer, and Ricky confirmed this

version of the event. Therefore, appellants' claim is without merit.

Appellants fourth contention is that the trial court's refusal to grant a view of the scene was highly prejudicial to the defense, as such a view would have proven that the Commonwealth's witnesses could not have witnessed the events to which they testified.

Because the shooting incident occurred in December and the trial did not take place until July, when, due to the foliage on the trees, the countryside would bear no resemblance to its appearance in December, the trial court relied on photographs and a sketch of the scene. The photographs used at trial were taken at a time which accurately reflected the foliage as it would have appeared on the date of the incident.

Rule 1112 of the Pennsylvania Rules of Criminal Procedure provides that a trial judge may, in his discretion, order a view of the scene of the crime. Absent an abuse of discretion, the trial judge's decision not to allow view will not be overturned. *Commonwealth v. Jones*, 319 Pa.Super. 570, 574, 466 A.2d 691, 693 (1983). We find that in view of the difference in landscape at the time of trial from the date of the shooting, the trial judge properly disallowed a view of the scene.

Reversed and remanded for new trial. Jurisdiction relinquished.

BECK, J., files a dissenting opinion.

BECK, Judge, dissenting:

I respectfully dissent from the majority's decision to reverse appellants' convictions for violating state game laws. Appellants' claim that law enforcement officers obtained a search warrant on the basis of stale information has not been preserved for appellate review. The only suppression issue that appellants raised in the trial court concerned the seizure of items not covered by the search

warrant. This issue was correctly addressed by the trial court in the following portion of its opinion:

> The defendants contend that the search of their residence, on January 30, 1988, exceeded the scope permitted by the search warrant which had been obtained by the police. Specifically, they contend that certain items were seized which were not identified as items to be searched for in the warrant itself. *The defendants do not contest the fact that the Commonwealth had probable cause for the issuance of a warrant, nor do they attack the warrant itself.* During the search, game officers and other law enforcement officials were intent upon seizing .30–06 rifles, owned by the defendant, any one of which might have been used by the defendant in the game violations alleged. While at the home, the police also seized certain .30–06 ammunition with the thought of using it for test firing purposes. Having thought better of this procedure, the ammunition was returned. The weapon seized, was, however, retained by the police, test fired, and shown ultimately to be the weapon whose expended rounds were found at the scene. The fact that items, outside a warrant, are taken does not necessitate suppressing those items which are legally seized. *Commonwealth v. Stewart*, 343 [Pa.Super.] 514, 495 A.2d 584 (1985)....
>
> In this case, the only items which the Commonwealth sought to admit into evidence were those which were identified in the search warrant itself. The Commonwealth did not introduce into evidence any items seized which were not identified in the warrant. We see no basis, therefore, in suppressing evidence otherwise lawfully seized.

Trial Court Op. at 3–4 (emphasis added).

On appeal, appellants have shifted gears and attacked the issuance of the warrant. I would not reach the merits of this new issue. This court cannot review a case upon a different theory from that relied upon in the trial court. *Commonwealth v. Mehalic*, 382 Pa.Super. 264, 284, 555

A.2d 173 (1989). "A theory of error different from that presented to the trial jurist is waived on appeal, even if both theories support the same basic allegation of error which gives rise to the claim for relief." *Commonwealth v. Gordon*, 364 Pa.Super. 521, 543, 528 A.2d 631, 638 (1987). *See, e.g., Commonwealth v. Harmes*, 255 Pa.Super. 147, 153 n. 1, 386 A.2d 551, 553 n. 1 (1978); *Commonwealth v. Waters*, 248 Pa.Super. 123, 128–29, 374 A.2d 1348, 1351–52 (1977). I recognize that there may be exceptional circumstances in which a rigid and inflexible application of the waiver doctrine would be unreasonable and unfair. However, I can see no justification for reversing a judgment of sentence where, as here, the appellants rely on a theory that is substantially different from the theory presented to the trial court, the trial court was deprived of an opportunity to consider the new theory, and the only punishment imposed on the appellants was a fine.

Since appellants have waived their challenge to the search warrant, I would not reach the merits of their staleness claim. I conclude that appellants' remaining issues are not meritorious, and I would therefore affirm the judgments of sentence.