**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Walter PALMER, Appellant.**

Superior Court of Pennsylvania.

Submitted June 9, 1997.

Filed Sept. 4, 1997.

---

John J. Fioravanti, Doylestown, for appellant.

Alan M. Rubenstein, District Attorney, Doylestown, for Commonwealth, appellee.

Before JOHNSON, SCHILLER and BROSKY, JJ.

SCHILLER, Judge.

Appellant, Walter Palmer, appeals from the judgment of sentence entered by the Court of Common Pleas of Bucks County on December 9, 1996. We affirm appellant's conviction, but vacate the sentence and remand for sentencing.

FACTS:

On July 4, 1996, appellant was charged with rape [1], involuntary deviate sexual intercourse (IDSI) [2], corrupting the morals of a

---

1. 18 Pa.C.S. § 3121(1)(2)(6)

2. 18 Pa.C.S. § 3123 a(1)(2)(6)(7)

minor [3], and related offenses [4]. These charges arose from allegations made by a young woman 16 years old [5] who, from August, 1991, when she was eleven, until April, 1996, resided in appellant's trailer-home along with her mother (who was appellant's paramour), and her brother. Initially, the relationship between appellant and the minor was that of "father and daughter," but in September 1992, appellant french kissed her. She told no one because she was afraid to ruin her mother's relationship; furthermore, appellant told her that if she told anyone he would be sent away for a long time.

In December 1992, appellant took the minor to Massachusetts to have braces put on her teeth [6], staying with her in a motel. On this trip a sexual relationship began: appellant purchased lingerie for the minor, then 12; took Polaroid pictures of her in suggestive poses in the lingerie; and then had sexual intercourse with her. Appellant took the girl to the dentist for check ups roughly every six months, having sex with her each time.

After returning to Pennsylvania, appellant began to have frequent sexual intercourse with the minor in his bedroom in the trailer.[7] She testified that a pattern developed involving oral sex followed by normal sexual intercourse; that this occurred approximately four times a week, sometimes more often; and that appellant occasionally had her watch pornographic videos during sex and at other times showed her pornographic pictures of other women. She also alleged that he forced her to have anal sex causing her to cry from pain. Although she occasionally came home late or feigned not feeling well to avoid appellant, the minor never told anyone about what was happening because she was frightened; eventually, she said, she just didn't care anymore.

In May 1996, appellant had a falling out with the minor's mother and the family moved out of his trailer. Subsequently, the girl returned twice to get her mail, and on Father's Day (June 16, 1996). On one of these occasions, appellant forced her to have sex one last time, saying she owed him for everything that he had done for her such as buying her jewelry, clothes and a car.

On July 3, 1996, this relationship came to light when during an argument, the girl blurted out that concerns over sex didn't matter—"It's too late, I'm not a virgin anymore." She then told her mother about the relationship between her and appellant. Her mother immediately took her to the police.

On July 4, 1996, the police executed a search warrant at appellant's residence. They found the pictures alleged to have been taken in December 1992, as well as lingerie, pornographic films and videos, pornographic pictures of other young women, receipts and credit card bills.[8] After a preliminary hearing on August 1, 1996, all charges were held for court. Appellant's omnibus pre-trial motion was litigated on October 9, 1996: the court granted a motion to suppress appellant's statement; denied a motion to suppress physical evidence seized pursuant to a search warrant; and deferred ruling on a motion *in limine* to bar admission of certain sexually explicit materials.[9]

Trial by jury began on October 9, 1996, before the same judge. On October 11, 1996,

---

3. 18 Pa.C.S. § 6301(a)

4. Appellant was charged with more than 30 crimes. At the conclusion of trial, the jury was charged on 16 counts and found appellant guilty of all 16.

5. The victim's date of birth is January 30, 1980.

6. Appellant claimed that the dentist in Massachusetts, a friend, would do the necessary orthodontic work for $2000 rather than the $4500 it would cost to do locally.

7. Appellant ran his telephone communications business from his home; the minor's mother worked full time; her brother, who was frequently at home when the sex occurred is developmentally disabled. The brother testified, however, that he had not noticed anything unusual between his sister and appellant.

N.T., October 10, 1996, p. 31.

8. These receipts and bills were culled by detectives to establish the timeframe and locations where appellant and the minor stayed on trips to Massachusetts.

9. The court specifically said it could not rule until the case progressed, and the relevance of each item became evident.

appellant was found guilty of all charges. The court ordered a pre-sentence investigation and psychological report. On December 9, 1996, appellant was sentenced to not less than ten nor more than twenty years on the rape conviction; a consecutive five to fifteen year term on the involuntary deviate sexual intercourse conviction and a concurrent tow and one half to five year sentence on corrupting the morals of a minor. On December 26, 1996, a post-sentence motion for reconsideration of sentence was denied without a hearing. This appeal followed.

DISCUSSION:

Appellant now raises three issues:

1) Whether the lower court erred in failing to suppress physical evidence seized upon execution of a search warrant?

2) Whether the trial judge erred in admitting certain sexually explicit photographs and pornographic films?

3) Whether the trial judge erred in imposing a sentence of total confinement of not less than fifteen nor more than thirty-five years?

█ When we review the ruling of a suppression court we must determine whether the factual findings are supported by the record. When [as here] it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. We are bound by the facts and may reverse the suppression court only if the legal conclusions drawn from those facts are in error. *Commonwealth v. Diaz,* 442 Pa.Super. 238, 245, 659 A.2d 563, 567 (1995) *aloc. denied* 542 Pa. 658, 668 A.2d 1123,(1995) (citations omitted).

Appellant first contends that the police searched his trailer illegally, using an invalid search warrant based on stale information. He argues that the facts alleged in the affidavit occurred over a five year period prior to April, 1996, that the photographs of the girl had not been seen for four months, and that there was no indication that criminal activity was on-going. Moreover, he asserts that in denying his motion to suppress all physical evidence, the trial judge improperly relied on the detectives' assertion that "child predators" are known to keep sexually explicit pictures for many years.

█ For a search warrant to be constitutionally valid, the issuing authority must decide that probable cause exists at the time of its issuance, and make this determination on facts within the four corners of the supporting affidavit and closely related in time to the date of the warrant. *Commonwealth v. Stamps,* 493 Pa. 530, 535–536, 427 A.2d 141, 143 (1981). Courts have not, however, established a hard and fast rule as to what constitutes staleness; that determination must be made on a case by case basis. *Id.* at 536, 427 A.2d at 144. For example, this court has found that "[p]roperly recited facts indicating activity of a protracted and continuous nature make the passage of time less significant (citation omitted)." *Commonwealth v. Davis,* 331 Pa.Super. 285, 295, 480 A.2d 1035, 1040 (1984). Explicating further, the Pennsylvania Supreme Court has written:

> 'Staleness' when raised must not be determined by rigorous exactitude, but rather by the experience of reasonable men, cognizant that events in the real world, and more specifically criminal events, have a life of their own. . . .

*Commonwealth v. Baker,* 513 Pa. 23, 28, 518 A.2d 802, 804, (1986). Furthermore, a reviewing court must pay great deference to an issuing authority's determination of probable cause for the issuance of a search warrant. *Commonwealth v. Woods,* 404 Pa.Super. 432, 436, 590 A.2d 1311, 1313 (1991) (citation omitted) *alloc. denied* 528 Pa. 637, 598 A.2d 994 (1991).

The affidavit at issue, dated and executed on July 4, 1996, recounted information provided by the minor on the evening of July 3. She described how for a four year period from 1992 to April 1996, appellant repeatedly forced her to have sex, both on trips to Massachusetts for her braces and in the trailer-home where they both lived, and that he took sexually explicit polaroid photos of her. She reported seeing those photos in appellant's home in March, 1996, and discuss-

ing them with him later that month [10]. She indicated that since her family moved out on April 5, she had returned to appellant's home 3 times, most recently on Father's Day, June 16, 1996. The minor's mother related that she had given appellant a Polaroid camera in 1990, and further, that she had found pornographic photos of young girls in appellant's bureau. Confronting him with them, appellant said they didn't affect his relationship with her, were from his past and that some were of the daughter of a woman he had dated. Despite their altercation, appellant kept the 20–30 year old pictures. The affidavit concluded:

> Through our experience in investigating these types of cases involving child molestation/pornography, your affiants have learned that these types of child predators tend to keep the sexually explicit photos they take of the children for their own sexual gratification for many years.

Application for Search Warrant and Affidavit, July 4, 1996.

■ We find that the facts presented in the affidavit were such that a reasonable person could conclude, without difficulty, that protracted and varied criminal activity had occurred for almost four years up until April 1996, and that in all probability it was ongoing. Not only had the minor gone back to appellant's home since that time, but, only 4 months earlier, she had seen the sexually explicit photos appellant had taken of her when she was 12. When buttressed by the mother's statement that appellant had other pornographic photos of young girls collected over many years, and the affiants' experience in similar cases, the passage of a relatively short period of time in a case of this nature [11] pales in significance. Noting the deference to be accorded an issuing magistrate, we conclude that the trial court correctly found

that probable cause to issue a warrant existed and the motion to suppress was properly denied.

■ Appellant next raises an issue of admissibility of evidence. Unless otherwise barred by a legal impediment, the trial judge enjoys broad discretion in admitting or excluding evidence, and in reviewing the trial judge's decision "we will not reverse his decision absent an abuse of that discretion." *Commonwealth v. Mignogna*, 401 Pa.Super. 188, 207, 585 A.2d 1, 10 (1990) *alloc. denied* 530 Pa. 660, 609 A.2d 167 (1992). In this instance, appellant specifically contends that the trial court improperly admitted 6 photographs of women in sexual poses, and pornographic films found in appellant's bedroom. He argues that this evidence was not probative of issues in the case and, even if relevant, was highly prejudicial.

■ The first test of admissibility of evidence is relevance, and relevancy is determined by examining whether the evidence sought to be introduced tends to "establish a material fact or make a fact at issue more or less probable." *Commonwealth v. Cohen*, 529 Pa. 552, 563, 605 A.2d 1212, 1218 (1992). Evidence that is relevant, i.e., probative of a material fact, may still be excluded if its probative value is outweighed by its prejudicial effect. *Commonwealth v. Peer*, 454 Pa.Super. 109, 684 A.2d 1077 (1996). However, since all Commonwealth evidence in a criminal case will be prejudicial to the defendant, exclusion of otherwise relevant evidence will only be necessary where "the evidence is so prejudicial that it may inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. McMaster*, 446 Pa.Super. 261, 272, 666 A.2d

---

**10.** Unable to find the photos, the minor asked appellant where the photos were. Appellant indicated he had hidden them "in a good place" and implied that might be his truck, his only means of transportation.

**11.** Faced with a "staleness" challenge to a warrant in a child pornography case, Judge Scirica of the Third Circuit recently wrote:

> Age alone ... does not determine staleness. "The determination of probable cause is not merely an exercise in counting the days or

even months between the facts relied on and the issuance of the warrant." (citation omitted) Rather we must also examine the nature of the crime and the type of evidence.

*U.S. v. Harvey*, 2 F.3d 1318, 1322 (1993). Discussing the nature of the offense at hand, the Circuit Court also relied on an investigating agent's statement that "pedophiles rarely, if ever, dispose of sexually explicit material." *Id.* at 1323.

724, 729 (1995) (citation omitted). As this Court has noted, "a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which the defendant is charged." *Commonwealth v. Peer, supra,* at ——, 684 A.2d at 1083 (citation omitted).

At trial, the minor testified about both disputed items of evidence.[12] She explicitly said that appellant would show her pornographic movies during sex, and that at other times he displayed photographs to her of other young women in sexual poses, either nude or wearing lingerie.[13] N.T., October 9, 1996, p. 29 and pp.42–44. These items were admitted, over objection, by the trial court. The jury, however, was permitted to see only the external packaging of individual videos to confirm that the items taken from appellant's trailer, and now in two bags in the courtroom, were adult videos, and the 6 photos of a young woman were not published to the jury, although they were admitted, and described as follows:

> By Mr. Weintraub (for the Commonwealth):
>
> Q. Detective, without revealing, showing the photograph to the jury, would you please describe what is contained in those photographs.
>
> A. The next six ... Polaroid photographs, appear to be all of the same female; a young white female, whose name is not known to us. She is in various states of attire between black stockings and high heels, garter belt, black short negligee. In one she's topless, in another

she's bottomless. She's displaying herself in sexually provocative poses....

N.T., October 10, 1996, p. 156.

As the record demonstrates, both the films and the sexually explicit photos were relevant to this case. In each instance the evidence corroborated the minor's testimony: the fact that pornographic films and videos were found in appellant's bedroom made it more probable that he did in fact play these movies while having sex with her; the fact that he possessed sexually explicit photos made it more probable that he showed them to her. The photos were also directly relevant to another issue in the case: whether, contrary to appellant's testimony, he had taken the sexually explicit photos of the minor in a motel in Massachusetts. The photos of the second young girl were strikingly similar to those of the minor: not only is each girl very young, both are wearing black lingerie, are partially naked and are depicted in similar sexual poses; both sets of pictures were polaroids. As the trial judge wrote: "The pictures of the other woman serve to make it more probable that the defendant actually took the pictures of N* * * * * versus simply finding them in her room." *Commonwealth v. Palmer,* Memorandum Opinion, March 4, 1987, Court of Common Pleas of Bucks County, p.6.

We also concur with the trial court that in neither case was the probative value of this material outweighed by its prejudicial impact. On the contrary, we are struck by the trial judge's deliberate and careful effort to delimit the physical evidence admitted and/or submitted to the jury. There was no testimony about the titles or contents of the reels of film; nor were they shown to the jury. Similarly, the trial judge did not admit all the sexually explicit photos of young women found in appellant's trailer[14]; rather he

---

**12.** The minor's testimony about the photos of other naked women was generic. Subsequently, as the record reflects, the trial court permitted the Commonwealth to show her, outside the courtroom, a stack of such pictures found in appellant's bedroom in order to identify those previously shown to her. N.T. October 10, 1996, p.236. She identified only the six admitted into evidence (and one postcard).

**13.** At trial, appellant denied that he had taken sexually explicit photos of the minor, N.T., Octo-

ber 10, 1996, p.188, or that he had shown her photos of other naked women. N.T., October 10, 1996, p.220–221. He also denied showing the pornographic films to the minor, but suggested she might have seen them with her brother whom appellant said had taken films from his bedroom. N.T., October 10, 1996, p. 190.

**14.** The Inventory of Seized Property form lists more than 100 sexually explicit photos of females, many of them of very young women.

admitted only six photos which were not only specifically identified by the minor, but also suggested a common scheme in appellant's behavior.[15] In these circumstances, we find no abuse of discretion by the trial court.

In his final issue appellant challenges his aggregate sentence of 15 to 35 years, arguing that: 1) the court failed to consider his background and work record; 2) that the court improperly imposed a consecutive sentence for the involuntary deviate sexual intercourse charge; and, 3) the sentence on the rape charge was excessive.

Generally, sentencing is a matter within the sound discretion of a sentencing judge and a sentence will not be disturbed by an appellate court absent manifest abuse. *Commonwealth v. White*, 341 Pa.Super. 261, 270, 491 A.2d 252, 257 (1985) (citation omitted). The sentence must either exceed the statutory limits or be manifestly excessive to constitute an abuse of discretion. *Id.* Furthermore, as appellant acknowledges, he does not have an appeal as of right from the discretionary aspects of a sentence[16]. 42 Pa.C.S. § 9781(b); *Commonwealth v. Scullin*, 414 Pa.Super. 442, 446–447, 607 A.2d 750, 752 (1992), *alloc. denied* 533 Pa. 633, 621 A.2d 579 (1992). Two requirements must be met before appellant's challenge to the judgment of sentence will be heard on the merits. *Commonwealth v. Koren*, 435 Pa.Super. 499, 503, 646 A.2d 1205, 1207 (1994). First appellant must "set forth in his brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f), *Id.* Second, the appellant must show "that there is a substantial question that the sentence imposed is not appropriate under this chapter." 42 Pa.C.S. § 9781(b); *Commonwealth v. Tuladziecki*, 513 Pa. 508, 513, 522 A.2d 17, 20 (1987), *Commonwealth v. Urrutia*, 439 Pa.Super. 227, 236, 653 A.2d 706, 710, *alloc. denied* 541 Pa. 625, 661 A.2d 873 (1995).

Appellant has provided the requisite statement containing a litany of errors which he argues raises a set of substantial questions. These include imposition of consecutive sentences for rape and IDSI; reliance by the sentencing court on the nature of the crime to the exclusion of other factors; impermissible consideration by the court of appellant's 1991 Accelerated Rehabilitative Disposition (ARD) when computing the guideline range for sentencing; failure, when sentencing outside the guidelines, to articulate either the guidelines or the rationale for deviating from them; imposition of a sentence that at appellant's age (57) is cruel and unusual punishment. We address these contentions in order.

Appellant's first two allegations fail to raise a substantial question. Under Pennsylvania law, a sentencing judge possesses the discretion to impose consecutive sentences where, as here, there are multiple convictions. 42 Pa.C.S. § 9757; *Commonwealth v. Jones* 418 Pa.Super. 93, 613 A.2d 587 (1992) *alloc. denied* 535 Pa. 615, 629 A.2d 1377 (1993). Further, an allegation that the sentencing court did not consider certain factors, a challenge to the weight accorded the evidence, does not raise a substantial question that the sentence was inappropriate. *Commonwealth v. Urrutia*, 439 Pa.Super. 227, 236, 653 A.2d 706, 710 (1995).

Appellant's third argument, that his ARD[17] was improperly treated as a conviction and used in the computation of the sen-

---

15. The probative value of this evidence undercuts appellant's reliance on *Commonwealth v. Impellizzeri*, 443 Pa.Super. 296, 661 A.2d 422 (1995) *alloc. denied* 543 Pa. 725, 673 A.2d 332 (1996), which holds that mere possession of sexually explicit materials does not tend to establish guilt and, therefore, dictate admission. *Id.* at 314, 661 A.2d at 431. In *Impellizzeri*, the magazine at issue which dealt with anal sex was in the defendant's possession, but there was no evidence it had been used in any way in the sexual attack or even shown to the victim. *Id.* In the instant case, the photographs not only served to corroborate the victim's claim that such pictures were shown to her, but were also probative of a fact in controversy.

16. Under 18 Pa.C.S. § 1103(i), a person convicted of a felony of the first degree may be sentenced to imprisonment for not more than 20 years. Rape and involuntary deviate sexual intercourse are each felonies of the first degree.

17. In 1991, appellant was given an ARD for attempting to lure a friend of the minor involved in this case into his bedroom.

tencing guideline range, although framed as part of his request for allowance of appeal under Pa. R.A. P. 2119(f), in reality goes to the legality of appellant's sentence. This issue is part of the question of whether appellant was inappropriately sentenced as a repeat felony offender which is determined in part by the computation of the prior record score, and will be addressed accordingly. This court has held that "calculation of a prior record score or an offense gravity score are not matters within the trial court's discretion. Therefore, neither [42 Pa.C.S.] § 9781 nor [Pa.R.A.P.] 2119(f) are implicated in this issue on appeal." *Commonwealth v. Johnson,* 421 Pa.Super. 433, 440, 618 A.2d 415, 418–419 (1992). "[W]here the issue on appeal is the improper calculation of a prior record score or an offense gravity score, a direct appeal lies because these are legal questions, and a discretionary review is not appropriate." *Id.* at 440, 618 A.2d at 419. Thus, with regard to this issue appellant has an appeal as of right.

The sentencing sheets in the record before us show that appellant was sentenced as a repeat felony offender (RFEL), *See* 204 Pa.C. § 303.4(c)[18], a classification which requires a prior record score of 6, and which resulted in a guideline of 72–96 months being presented to the court[19]. This determina-

tion was made despite the fact that appellant's prior record score was accurately computed to be a 5.[20] The record provides no basis for determining the source of this error[21], but it clearly resulted in the court being misinformed on the legally applicable guidelines in appellant's case. On this basis, we must vacate appellant's sentence and remand for sentencing using the correct guideline of 60–84 months as the point of departure.

Appellant's two remaining contentions have each been held by this court to raise a substantial question. *See Commonwealth v. Thomas,* 370 Pa.Super. 544, 537 A.2d 9 (1988)(substantial question raised where there is an allegation that sentencing court did not adequately explain its reason for the sentence) and *Commonwealth v. Jones* 418 Pa.Super. 93, 613 A.2d 587 (1992) (claim that sentence imposed was "cruel and unusual" sets forth ... a colorable argument that trial judge's actions were contrary to the fundamental norms of sentencing process). However, in light of our decision related to the prior record score imputed to appellant, we need not address them. We note only that although a court may sentence outside the guidelines, *Commonwealth v. Johnson,* 446 Pa.Super. 192, 197, 666 A.2d 690, 693 (1995) (citation omitted)[22], it must also "demon-

---

**18.** 204 Pa.C. § 303.4
(c) Repeat felon 1 and felony 2 offender category (RFEL). Offenders who have previous convictions or adjudications for felony 1 and/or felony 2 offenses *which total 6 or more in the prior record,* and who do not fall within the repeat violent offender category, shall be classified in the repeat felony 1 and felony 2 offender category. (Emphasis added).
204 Pa.C. § 303.4(c)

**19.** The record reveals that at the beginning of the sentencing hearing the court requested and was handed the guideline sheets. Subsequently, at the court's request a separate sheet was prepared for the corruption of minor conviction. The latter is also found in the record.
N.T., December 9, 1996, p. 2, 8–9.

**20.** The prior record score was computed on the basis of one aggravated assault—2 points; one felony drug conviction—2 points; one federal hijacking charge—1 point. A weapons misdemeanor had no score enhancement.

**21.** The District Attorney's statement at sentencing that appellant's ARD is "obviously not re-

flected on the guidelines." N.T., December 9, 1996, p.7, does not cure the error that resulted in the inclusion of some additional unexplained conviction in appellant's record score. See 204 Pa.C. § 303.7(f):

(f) Excluded offenses. The following types of offenses shall not be scored in the prior record score:
(1) Summary offenses, violations of local ordinances, and dispositions under Pa. Rules Crim. P. 175–185 (relating to accelerated rehabilitative disposition).…
204 Pa.C. § 303.7(f)(1)

**22.** The Sentencing Code provides:

In every case where the court imposes a sentence outside the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing ... the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence.
42 Pa.C.S. § 9721(b)

strate on the record an awareness of the applicable guideline ranges." *Commonwealth v. Johnson, supra* at 199, 666 A.2d at 694. Given the absence of an on the record acknowledgment of the guidelines[23], the sentence as entered was technically defective: we trust that this omission will be remedied on remand[24]. Appellant's final claim that his sentence constitutes cruel and unusual punishment is unsupported by any citation to similar situations where a constitutional violation was found to exist. We note, however, that in light of the gravity of the crimes, and appellant's conviction on multiple counts of rape and involuntary deviate sexual intercourse, there is simply no merit to appellant's claim that a 15 year sentence constitutes cruel and unusual punishment.

## CONCLUSION:

The motion to suppress was properly denied because the search of appellant's trailer was based on a constitutionally valid search warrant. Furthermore, the trial judge did not abuse his discretion in admitting selected evidence that was not only relevant but also more probative than prejudicial. However, because an erroneous prior record score was imputed to appellant, leading to sentencing under the repeat felony offender guidelines, we are compelled to vacate the sentence and remand for sentencing.

Accordingly, appellant's convictions are affirmed; however, his sentence is vacated and this matter is remanded to the Court of Common Pleas of Bucks County for resentencing. Jurisdiction relinquished.

---

**23.** On remand the guidelines should be explicitly articulated to eliminate any question on this issue. *See Commonwealth v. Johnson*, 446 Pa.Super. 192, 197, 666 A.2d 690, 693 (1995).

**24.** We do note that the sentencing judge did provide a full recitation of the factors he utilized in deviating from the guidelines. He noted that he had read the various impact statements from the minor and her family, the mental health evaluation and "an excellent and carefully prepared PSI (pre-sentence investigation report)." With that background, he addressed the appellant, noting that the law required that he review a range of factors to arrive at sentence:

> Let's deal with yourself first. You did serve your country honorably. We take that into account. That is to your credit . . . .
> On the other hand, you have a record which is not good one in terms of prior offenses . . . . the last of those offenses goes back probably . . . to 15 years ago.
> On the other hand we have an ARD in 1991 . . . certainly cognate to the kind of offense which occurred here.
> . . .
> We also have . . . your willingness and ability to use a position of authority and power in a household and to apply that to a very weak and very young child.

The use of power and authority against anyone for criminal purposes of for purposes of embarrassment and physical debasement is a bad thing, a terrible thing. But when its applied to someone so weak, someone so incapable of evaluating all the circumstances, someone so unsophisticated in gathering in her own mind exactly what she should be doing, what you should not be doing is a terrible thing.

. . .

And then it's not enough that you do these things, but that you record . . . her in those poses for your own . . . delectation to note the conquest, I can't imagine what purpose it may have been, but you kept them.

I note that the jury made certain findings of guilt with respect to certain time periods. . . . it is very instructive to have that . . . because they give me comfort in applying separate sentences to the rape charge, a separate sentence to the involuntary deviate sexual intercourse charge, and a separate sentence in the corrupting of minors charge...

...My purpose is to reach a sentence consistent with what I believe are the needs of the community and your rehabilitative needs, and the requirements of security for the community and frank plain punishment.

These acts must not go unpunished.

N.T., December 9, 1996, p. 15-18.