J-A21023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LENN T. TUCKER, JR. | : | |
| | : | |
| Appellant | : | No. 1474 EDA 2018 |

Appeal from the Judgment of Sentence November 9, 2017
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0003846-2016

BEFORE:  BOWES, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 22, 2019**

Appellant, Lenn T. Tucker, Jr., appeals from the judgment of sentence entered on November 9, 2017, following his jury trial convictions for first-degree murder,[1] possession of an instrument of crime,[2] persons not to possess firearms,[3] and firearms not to be carried without a license.[4]  We affirm.

The facts of this case are as follows.  On August 26, 2016, at approximately 6:04 A.M., the victim, Alex Hartzel, was shot and killed while walking down a back alley in Coatesville, Pennsylvania.  Importantly, the

_____

[1] 18 Pa.C.S.A. § 2502(a).

[2] 18 Pa.C.S.A. § 907(a).

[3] 18 Pa.C.S.A. § 6105(a)(1).

[4] 18 Pa.C.S.A. § 6106(a)(1).

murder was captured by a near-by surveillance camera, but the tape did not clearly show the identity of the individual who shot the victim. Trial Court Opinion, 9/14/18, at 3.

The evidence introduced at trial revealed that, earlier that morning, the victim and another individual named Samuel Grove bought drugs from Appellant. *Id.* at 4. The victim, however, was unhappy with the quality of drugs sold by Appellant and subsequently confronted him with a Swiss Army knife. *Id.* Thereafter, Appellant directed him down an alley known as Diamond Alley, the location of the murder. *Id.* Appellant then went to his car where he retrieved a firearm. *Id.* At that point, Appellant followed the victim down Diamond Alley and fatally shot him. *Id.* The surveillance video captures Appellant's vehicle in the area of the murder, both before and after the shooting. *Id.*

In the days following the murder, the police interviewed various individuals, including Grove. In fact, the police interviewed Grove on three separation occasions; first, on August 26, 2016, the day of the shooting (N.T. Pre-Trial Hearing, 5/15/17 (Volume I) at 52); second, on August 27, 2016, during which the police showed Grove two photos of Appellant (*id.* at 54); and finally, on August 31, 2016, after Grove was arrested for an unrelated crime, the police provided him with a photo array, where he identified Appellant as the murderer (*id.* at 58).

On September 9, 2016, the police interviewed Appellant. Trial Court Opinion, 9/14/18, at 4. During this interview, Appellant admitted being in the

area and that, at the time of the murder, he was "walking down the alley behind the victim just before he was shot." *Id.* Appellant, however, maintained that others were also in the alley and that "he heard gunshots but did not see who fired the gun." *Id.* Video surveillance confirmed, however, that only Appellant and the victim were in the alley at the time of the shooting. *Id.*

Thereafter, on October 28, 2016, the Commonwealth filed a criminal information against Appellant. Bill of Information, 10/28/16, at 1-3. Before trial, the Commonwealth filed a motion *in limine*, seeking introduction of evidence that, prior to the murder, Appellant sold drugs to the victim. Commonwealth's Motion *in Limine*, 4/10/17, at 1-2. In addition, through counsel, Appellant filed a motion to suppress Grove's August 31, 2016 identification. Appellant's Motion to Suppress Evidence, 4/13/17, at 1-7. A hearing was held on May 15, 2017. N.T. Pre-Trial Hearing, 5/15/17 (Volume I), at 1-147. Ultimately, the trial court granted the Commonwealth's motion *in limine*, but denied Appellant's motion to suppress. Trial Court's Order, 6/19/17, at 1.

Appellant's jury trial commenced on July 24, 2017. During trial, the Commonwealth presented multiple identifications of Appellant during Grove's testimony. First, Grove testified that he and the victim bought drugs from Appellant on the morning of the murder. N.T. Trial, 7/27/17 (Volume I), at 120-121. Then, Grove made an in-court identification of Appellant. *Id.* Grove also testified that, on August 31, 2016, he made an out-of-court identification

- 3 -

of Appellant in a photo array. *Id.* at 155-164. On July 27, 2017, Appellant was found guilty of first-degree murder, possession of an instrument of crime, persons not to possess firearms, and firearms not to be carried without a license. Trial Court Opinion, 9/14/18, at 1. On November 9, 2017, Appellant was sentenced to life imprisonment without the possibility of parole for the first-degree murder conviction, with an additional one to two years' imprisonment for the additional crimes. *Id.* This timely appeal followed.[5]

Appellant presents the following issues on appeal:

   I.    Did the [t]rial [c]ourt commit legal error in permitting [the] introduction of identification evidence against Appellant?

   II.   Did the [t]rial [c]ourt abuse its discretion in granting the Commonwealth's [m]otion *in [l]imine* allowing evidence of Appellant's prior bad acts to be admitted at trial?

   III.  Was the jury's finding that Appellant was guilty of [first-degree murder] in opposition of sufficient evidence presented during trial?

Appellant's Brief at 5.

---

[5] Appellant filed a notice of appeal on December 5, 2017. On December 6, 2017, the trial court filed an order directing Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). After securing an extension from the trial court, Appellant timely complied. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 14, 2018.

In Appellant's first issue, he contends that the trial court erred in denying his motion to suppress Grove's identification testimony.[6]  Appellant's Brief at 23.  Appellant argues that the "photographic identification process utilized by the police was highly suggestive and unreliable" and that the Commonwealth failed to establish an "independent basis for the subsequent in-court identification."  *Id.* at 23-24.  We disagree.

We review the denial of a motion to suppress as follows:

An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains un[-]contradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Stevenson*, 894 A.2d 759, 769 (Pa. Super. 2006) (citation omitted). Although we are bound by the factual and the credibility determinations of the trial court which have support in the record, we review any legal conclusions *de novo*. *Commonwealth v. George*, 878 A.2d 881, 883 (Pa. Super. 2005), *appeal denied*, [] 891 A.2d 730 (Pa. 2005).

---

[6] Appellant did not raise an objection to the introduction of the identification evidence by the Commonwealth during trial.  This Court, however, has previously held that an "[a]ppellant need not object to the introduction of evidence at trial in order to preserve a suppression issue for appellate review." *Commonwealth v. Maxwell*, 512 A.2d 679, 681 (Pa. Super. 1986); *see also Commonwealth v. Burchard*, 503 A.2d 936 (Pa. Super. 1986) (*en banc*).

*Commonwealth v. Wells*, 916 A.2d 1192, 1194–1195 (Pa. Super. 2007) (parallel citations omitted).[7]

"In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." *Commonwealth v. Moye*, 836 A.2d 973, 976 (Pa. Super. 2003), *appeal denied*, 851 A.2d 142 (Pa. 2004). Notably, a photo array is subject to attack as suggestive "if the police display to the witness only the picture of a single individual" or "if they show him the pictures of several persons among which the photograph of a single [] individual recurs or is in some way emphasized." *Simmons v. United States*, 390 U.S. 377, 383 (1968).

In this case, we agree that, under the totality of the circumstances, the police used a suggestive photo array in securing Grove's initial identification on August 31, 2016. *See* Trial Court Opinion, 6/19/16, at 2. As stated above, the police interviewed Grove on three separate occasions in a five-day span. First, on August 26, 2016, following the murder, the police interviewed Grove but did not show him any photos, and Grove made no identification of Appellant. N.T. Pre Trial Hearing, 5/15/17 (Volume I), at 52. Then, on August 27, 2016, Corporal Shannon Miller spoke with Grove in an undercover vehicle. *Id.* at 54. During this interaction, Corporal Miller initially showed Grove two photographs of Appellant and then showed him two photos of another

_____

[7] "Our scope of review is limited to the record developed at the suppression hearing, considering the evidence presented by the Commonwealth as the prevailing party and any un[-]contradicted evidence presented by [the defendant]." *Commonwealth v. Fulton*, 179 A.3d 475, 487 (Pa. 2018).

individual.  *Id.*  Subsequently, on August 31, 2016, the police presented Grove with a photo array that included photographs of several individuals together with a picture of Appellant.  *Id.* at 58.  It was on this occasion that Grove identified Appellant.  *Id.*  Because the police originally showed Grove a picture of Appellant as a single individual and then, just a few days later, provided him with a photo array containing a picture of Appellant, we agree with the trial court's conclusion that the procedure was impermissibly suggestive.  *See* Trial Court Opinion, 6/19/16, at 2; *see also Simmons*, 390 U.S. at 383.

Nevertheless, a finding of suggestiveness does not end our inquiry. Indeed, "the suggestiveness of the identification procedure is one relevant factor in determining the reliability of an identification, '[s]uggestiveness alone will not forbid the use of an identification, if the reliability of a subsequent identification can be sustained.'"  *Commonwealth v. Davis*, 17 A.3d 390, 394 (Pa. Super. 2011), *quoting Commonwealth v. McGaghey*, 507 A.2d 357, 359 (Pa. 1986).  An identification may still be reliable, and hence, admissible, if the Commonwealth can prove, "through clear and convincing evidence, the existence of an independent basis for the identification." *Commonwealth v. Fisher*, 769 A.2d 1116, 1127 (Pa. 2001), *cert. denied*, *Fisher v. Pennsylvania*, 535 U.S. 906 (2002).  Notably, "when the witness already knows the defendant, this prior familiarity creates an independent basis for the witness's identification of the defendant." *Commonwealth v. Reid*, 99 A.3d 427, 448 (Pa. 2014), *citing Commonwealth v. Ali*, 10 A.3d 282, 303 (Pa. 2010).

Here, the trial court determined that an independent basis existed for Grove's identification of Appellant. Specifically, the trial court found that Grove "testified that he knew [Appellant] for about six years prior to the murder." Trial Court Opinion, 6/19/16, at 2. Appellant does not dispute this fact. Indeed, in his appellate brief, Appellant admits that the two "knew each other from previous interactions in Coatesville and in prison." Appellant's Brief at 29. Accordingly, because Grove "already kn[ew]" Appellant, his "prior familiarity" formed an independent basis for the identification. *Reid*, 99 A.3d at 448. Therefore, the trial court did not err in denying Appellant's motion to suppress the Commonwealth's identification evidence.

In Appellant's second issue, he argues that the trial court abused its discretion by granting the Commonwealth's motion *in limine* and permitting it to introduce evidence that Appellant sold cocaine to the victim immediately prior to the murder. Appellant's Brief at 30. Specifically, Appellant contends that the Commonwealth's evidence was inadmissible under Pennsylvania Rule of Evidence 404(b). *Id.* Appellant's argument fails for multiple reasons.

First, review of the certified record and trial testimony establishes that this issue was not preserved for purposes of appellate review. Notably, Appellant did not file a response to the Commonwealth's motion *in limine* before or after the pre-trial hearing, even when specifically permitted by the trial court to do so. N.T. Pre-Trial Hearing, 5/15/17 (Volume I), at 142-143. Furthermore, Appellant did not make a specific objection on the record at the pre-trial hearing or at trial. In fact, Appellant's counsel seemingly agreed that

the Commonwealth "can probably bring in [evidence] as to what was going on." N.T. Pre-Trial Hearing, 5/15/17 (Volume I), at 142-143. Thus, Appellant utterly failed to place a timely objection to such evidence on the record. **See** Pa.R.E. 103(a)(1) (explaining that a claim of error "may not be predicated upon a ruling that admits or excludes evidence unless … a timely objection … appears of record"). Accordingly, this issue is waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Even if Appellant preserved this issue for appeal, we would conclude that the evidence of Appellant's previous drug sale to the victim was admissible under Rule 404(b). This rule provides that, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.Evid. 404(b)(1). However, Rule 404(b)(2) permits "other acts" evidence if it is admissible "for another purpose." Pa.R.Evid. 404(b)(2). The rule specifically references the following permissible purposes: "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." **Id.** In addition, our Supreme Court previously recognized another exception to the general rule, known as the res gestae exception. **See Commonwealth v. Lark**, 545 A.2d 491 (Pa. 1988). Pursuant to **Lark**, evidence of other crimes and acts is admissible to enable the Commonwealth to tell the "complete [] story of the crime" by "providing its immediate context of happenings near in time and place." **Id.** at 497, *quoting*

McCormick on Evidence § 190 (2d ed. 1972). However, even if evidence is admissible for another purpose, Rule 404(b)(2) also requires, in a criminal case, that the "probative value of the evidence [to] outweigh[] its potential for unfair prejudice." Pa.R.Evid. 404(b)(2).

In this instance, Appellant seemingly concedes that the evidence of the prior drug transaction was admissible under the *res gestae* exception or to prove motive. *See* Appellant's Brief at 32. Appellant argues, however, that its prejudicial effect outweighed its probative value. *Id.* We disagree.

First, the evidence of the drug sale, while prejudicial, was not "so prejudicial" as to "inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." ***Commonwealth v. Serge***, 837 A.2d 1255, 1261 (Pa. Super. 2003), *quoting* ***Commonwealth v. Palmer***, 700 A.2d 988, 992-993 (Pa. Super. 1997). Indeed, the fact that Appellant sold drugs to the victim, and that the victim then confronted Appellant with a Swiss Army knife regarding the quality of the drugs, merely provides context to how the two knew each other, as well as a possible motive behind the murder.

Second, the trial court adequately limited the risk of unfair prejudice. Notably, the Commonwealth sought to introduce evidence of several additional drug transactions between Appellant and other individuals on the day of the murder. N.T. Pre-Trial Hearing, 5/15/17 (Volume I), at 138-144. The trial court, however, determined that such evidence was irrelevant, and to the extent that it was relevant, it was unfairly prejudicial. ***Id.*** As such, the

trial court limited the Commonwealth to introducing evidence of a single drug sale between Appellant and the victim. Trial Court Opinion, 6/19/17, at 4. In addition, the trial court provided a limiting instruction when the evidence was introduced. N.T. Trial, 7/27/17 (Volume I), at 158. Therefore, Appellant's contention is meritless.

Finally, Appellant argues that the evidence was insufficient to sustain his conviction of first-degree murder.[8] Appellant's Brief at 33. In particular, Appellant asserts that the Commonwealth failed to prove that he did, in fact, kill the victim. *Id.* at 35. Accordingly, he contends that the evidence was insufficient to enable the jury to conclude that he possessed the specific intent to kill. *Id.* We disagree.

We consider sufficiency of the evidence claims under a well-accepted standard of review:

> In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable the jury to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

---

[8] While Appellant was convicted of other crimes during his trial, he only challenges the sufficiency of the evidence for the first-degree murder conviction. Therefore, this Court is limited to the review of this conviction on appeal.

***Commonwealth v. Eline***, 940 A.2d 421, 432 (Pa. Super. 2007) (internal citations and quotations omitted). Under Pennsylvania law,

> [t]o find a defendant guilty of first-degree murder a jury must find that the Commonwealth has proven [beyond a reasonable doubt] that he or she unlawfully killed a human being and did so in an intentional, deliberate and premeditated manner. It is the element of a willful, premeditated and deliberate intent to kill that distinguishes first-degree murder from all other criminal homicide. Specific intent to kill may be inferred from the defendant's use of a deadly weapon upon a vital party of the victim's body.

***Commonwealth v. Sattazahn***, 763 A.2d 359, 363 (Pa. 2000) (emphasis added); 18 Pa.C.S.A. § 2502 ("A criminal homicide constitutes murder of the first[-]degree when it is committed by an intentional killing.")

Based upon review of the certified record, the parties' submissions, and the trial court's opinion, we find that the trial court thoroughly and accurately set forth why the evidence in this matter was sufficient to convict Appellant of the aforementioned crimes. ***See*** Trial Court Opinion, 9/14/18, at 2-5. Consequently, we affirm on the basis of the trial court opinion and adopt it as our own. The parties are instructed to attach a copy of the trial court's September 14, 2018 opinion to all future filings regarding this appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/19

- 12 -

COMMONWEALTH OF PENNSYLVANIA  : IN THE COURT OF COMMON PLEAS

: CHESTER COUNTY, PENNSYLVANIA

vs.

: CRIMINAL ACTION -- LAW

LENN TUCKER, JR.  : NO. 3846-2016

Nicholas J. Casenta, Jr., Chief Deputy District Attorney for the Commonwealth
Alexander L. Silow, Esquire, Attorney for Appellant

## OPINION PURSUANT TO Pa.R.A.P. 1925

Appellant, Lenn Tucker, Jr., has appealed from the judgment of sentence entered against him on November 14, 2017. This Opinion is filed pursuant to Pa.R.A.P. 1925(a).

On July 27, 2017, following a jury trial, appellant was found guilty of one (1) count of First Degree Murder, one (1) count of Possessing Instrument of Crime, one (1) count of Firearms not to be Carried without a License, and one (1) count of Person not to Possess a Firearm. On November 9, 2017, he was sentenced to life imprisonment without the possibility of Parole for the First Degree Murder conviction. He received an additional 1-2 years imprisonment for the additional crimes, which are being served concurrently with his first degree murder sentence. Appellant thereafter appealed his judgment of sentence. He filed his Concise Statement of Matters Complained of on Appeal along with his Notice of Appeal. In it, he raises the following issues:

1. The Trial Court erred by denying [Appellant's] pre-trial motion seeking to bar the introduction of Identification Evidence;

2. The Trial Court erred by granting Commonwealth's motion in limine allowing evidence of [Appellant's] prior bad acts to be admitted at trial; and

3. The jury found the [Appellant] guilty in opposition of sufficient evidence presented during the trial.

See Appellant's Concise Statement of Errors Complained of on Appeal.

The first two issues raised in his Concise Statement were previously raised in a pre-trial motions, which were denied by the court in an Order dated June 19, 2016. In response to Pa.R.A.P. 1925(a), the trial court respectfully invites the Superior Court's attention to that Order, a copy of which is attached hereto, which includes the reasons for the court's decision in this matter.

In his third issue, appellant claims that the evidence produced at trial was insufficient to find him guilty of the charges against him.[1]

> In evaluating the sufficiency of the evidence, the test is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered, whether or not the trial court's rulings thereon were correct. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part, or none of the evidence.

Com. v. Hoskins, 403 A.2d 521, 522-23 (Pa. 1979)(Citations omitted). See also, Com. v. Brown, 711 A.2d 444 (Pa. 1998); Com. v. Chambers, 599 A.2d 630 (Pa. 1992).

Appellant claims that the evidence admitted at trial was insufficient for the jury to convict him of first degree murder. Pennsylvania Standard Jury Instruction 15.2502A (Crim) provides:

15.2502A (Crim)     FIRST-DEGREE MURDER

1.     The defendant has been charged with the offense of first-degree murder. First-degree murder is a murder in which the perpetrator has the specific

---

[1] While counsel does not specify which charge he is challenging, the court assumes he is referring to the first degree murder charge. To the extent he is challenging his other convictions, the court finds that the Commonwealth introduced sufficient evidence at trial to find appellant guilty of the charges of which he was convicted.

-2-

intent to kill. To find the defendant guilty of this offense, you must find that the following three elements have been proven beyond a reasonable doubt:

*First*, that *[name of victim]* is dead;

*Second*, that the defendant killed [him] [her]; and

*Third*, that the defendant did so with the specific intent to kill and with malice.

2. A person has the specific intent to kill if he or she has a fully formed intent to kill and is conscious of his or her own intention. As my earlier definition of malice indicates, a killing by a person who has the specific intent to kill is a killing with malice [provided that it is also without [circumstances reducing the killing to voluntary manslaughter] [or] [any lawful justification or excuse]].

[3. Stated differently, a killing is with specific intent to kill if it is [willful, deliberate, and premeditated] [by means of poison] [by lying in wait].]

[4. The specific intent to kill [including the premeditation] needed for first-degree murder does not require planning or previous thought or any particular length of time. It can occur quickly. All that is necessary is that there be time enough so that the defendant can and does fully form an intent to kill and is conscious of that intention.]

5. When deciding whether the defendant had the specific intent to kill, you should consider all the evidence regarding [his] [her] words and conduct and the attending circumstances that may show [his] [her] state of mind, including *[evidence]*. [If you believe that the defendant intentionally used a deadly weapon on a vital part of the victim's body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the defendant had the specific intent to kill.]

Pa.Standard Jury Instruction 15.2502A (Crim). A review of the evidence shows that the Commonwealth met its burden in this case. At trial, the Commonwealth established beyond a reasonable doubt each and every element of first degree murder. Further, the requisite level of culpability was established by the evidence introduced at trial.

This is a rare case in which the murder was caught on film by a near-by surveillance camera. The recording shows the victim walking down the alley. Another man follows shortly

- 3 -

after. The second man then shoots the victim multiple times. Each one of those shots shows a deliberate intent to kill. The surveillance tape does not clearly show the identity of the second man, so the only issue in this case is identification of the perpetrator.

The police interviewed appellant during their investigation of this matter. At the time, he did not know that the incident had been caught on film. During questioning, he admitted that he was walking down the alley behind the victim just before he was shot. He tried to claim that while he was walking, he saw other people walking down the alley and he heard gunshots but he did not see who fired the gun. Again, the video shows that appellant was the only person in the alley with the victim at the time of the shooting.

In addition, the Commonwealth established at trial that the victim purchased drugs from appellant. He was unhappy with the quality of the drugs, so he confronted appellant and asked for his money back. The victim showed appellant a Swiss army knife during this exchange. Appellant told the victim to meet him in the Diamond Street Alley. He then went to his vehicle and retrieved a handgun. He followed the victim into the alley and shot him in the backyard of one of the houses in the area. He then walked to where the victim fell and shot him again. Appellant's vehicle was seen in the area on surveillance video both before and after the shooting.

Based on the record, it is clear that the Commonwealth presented ample testimony and evidence from which the jury could find that every element of the crime of first degree murder was established beyond a reasonable doubt. Even though appellant tried to claim that another person in the alley was responsible for the shooting, based on the verdict, it is clear that the jury found the Commonwealth's version of events credible and determined that appellant's account was not credible. It was within the jury's province to do so. Accordingly, the court finds that

- 4 -

the evidence introduced at trial was sufficient as a matter of law to support the jury's guilty verdict and therefore, appellant is not entitled to relief on this basis.

Based on the foregoing, the court finds that each of appellant's alleged assignments of error are without merit.

BY THE COURT:

_9-14-18_
DATE

_Patrick Carr_
PATRICK CARMODY          J.

- 5 -

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

: CHESTER COUNTY, PENNSYLVANIA

vs.

: CRIMINAL ACTION -- LAW

LENN TUCKER, JR. : NO. 3846-16

Ronald C. Yen, Esquire, Deputy District Attorney for the Commonwealth
Edward C. Meehan, Esquire, Attorney for the Defendant

ORDER

AND NOW, this 19th day of June, 2016, upon consideration of Defendant, Lenn Tucker,

Jr.'s Motion to Suppress Identification Evidence, the testimony presented at a hearing on May

15, 2017, and the arguments of counsel, it is hereby ORDERED and DECREED that said motion

is DENIED.[1]

Further, the Commonwealth's Motion in limine to include evidence of defendant selling

drugs to Alex Hartzell prior to the homicide is GRANTED.[2]


BY THE COURT:

_Patrick Carmody_

PATRICK CARMODY                    J.


---

[1]     On August 26, 2016, Alex Hartzell was shot and killed in Coatesville at around 6:00 a.m.
Investigation into the matter led police to Mr. Samuel Grove, whom was believed to be a witness to
the murder.   During their conversation with Mr. Grove, he was shown two photographs of
defendant. At first, he denied recognizing the person in the pictures. The police talked to him again
a few days later.  At that time, he stated that the person in the photos he was shown previously was
known to him as "Butter," and that "Butter" was the shooter. He was then asked to pick the shooter
out from a photo line-up.  The police used a different picture of the defendant in the photo array,
and Mr. Grove immediately identified him as the shooter.

Defendant thereafter filed the instant Motion to Suppress, claiming that the extrajudicial identification of the defendant made by Mr. Groves Hudson should be precluded because it was the product of an impermissibly suggestive photographic line-up. The Pennsylvania Superior Court has explained:

> "In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." Commonwealth v. Moye, 836 A.2d 973, 976 (Pa. Super. 2003), *appeal denied*, 851 A.2d 142 (Pa. 2004). While the suggestiveness of the identification procedure is one relevant factor in determining the reliability of an identification, "[s]uggestiveness alone will not forbid the use of an identification, if the reliability of a subsequent identification can be sustained." Commonwealth v. McGaghey, 507 A.2d 357, 359 (Pa. 1986). Suggestiveness arises when the police employ an identification procedure that emphasizes or singles-out a suspect. *See* Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

Commonwealth v. Davis, 17 A.3d 390, 394 (Pa. Super. 2011).

In the instant case, the court finds that the police used a suggestive photo array when they initially showed Mr. Groves two photographs of the defendant only. That, however, does not end our inquiry. The court must now determine whether the identification was nevertheless reliable.

> To establish reliability in the wake of a suggestive identification, the Commonwealth must prove, through clear and convincing evidence, the existence of an independent basis for the identification. Commonwealth v. Fisher, 769 A.2d 1116, 1127 (Pa. 2001), *cert. denied*, Fisher v. Pennsylvania, 535 U.S. 906, 122 S.Ct. 1207, 152 L.Ed.2d 145 (2002). An independent basis is established when "the in-court identification resulted from the criminal act and not the suggestive [identification procedure]." McGaghey, 507 A.2d at 359. To determine if an identification resulted from the criminal act (and, therefore, has an independent basis), the trial court must consider the following factors:
>
> > [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
>
> Id. (citation omitted).

Commonwealth v. Davis, 17 A.3d 390, 394 (Pa. Super. 2011). See also, Commonwealth v. Johnson, 139 A.3d 1257, 1278–79 (Pa. 2016). With this standard in mind, the court will determine whether Mr. Grove's identification of defendant had an independent basis.

In the instant case, Mr. Grove testified that he knew "Butter" from both prison and from the neighborhood for about six (6) years prior to the murder. After considering all of the evidence introduced at the hearing, the court is of the opinion that his identification of the defendant resulted

from his previous contact with him and was not the result of a suggestive line-up. Thus, the court finds that, based on the totality of the circumstances in this case, the Commonwealth sufficiently established an independent basis for the identification of defendant by Mr. Grove. (Although the court is finding an independent basis in this matter, the court cautions the police from showing a witness the photograph(s) of only one (1) person in the future.) Since the court is finding that Mr. Hudson had an independent basis for making his extrajudicial identification of the defendant, defendant's Motion to Suppress same is denied.

The court notes that while Mr. Grove previously told the police that the defendant was the shooter, when he testified during the suppression hearing, he specifically denied this. To the contrary, he said he was talking with defendant on 7th Street when they heard gun shots coming from Diamond Street where the homicide occurred. He stated that defendant had a shotgun on him, but he did not fire it. He also said that defendant never went down Diamond Street. (Mr. Hartzell was killed with a handgun, not a shotgun.) Based on Mr. Grove's testimony, it is clear that he was very familiar with defendant prior to August 26, 2016. Thus, taint from an alleged impermissibly suggestive photo line-up is not the relevant issue in this case. The relevant issue is the credibility of Mr. Grove and which version of events the fact-finder chooses to believe. This credibility determination is properly left for the jury to determine during the trial of this matter.

Based on the foregoing, Defendant's Motion to Suppress is denied.

---

[2] The Commonwealth alleges that defendant killed Mr. Hartzell over a dispute about drugs. Specifically, it claims that defendant sold cocaine to Mr. Hartzell prior to the murder. Mr. Hartzell confronted defendant because he was upset about the quality of the drugs sold to him and he wanted his money back. Defendant then allegedly obtained a gun from a car, met Mr. Hartzell in the Diamond Street alley and shot him. The Commonwealth wants to introduce evidence regarding said drug sale to show motive for the killing. The Commonwealth claims that it also an important part of the history of the case and explains why things happened. Pa. Rule of Evidence 404(b) provides in relevant part:

**(b) Other crimes, wrongs, or acts**

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

(2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

(3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

Pa.R.Ev. 404(b). In the instant case, the evidence is not being admitted to prove the defendant's character in order to show conformity therewith. It is being admitted in order to show motive, intent, and/or absence of mistake or accident as permitted in Pa.R.Ev. 404(b)(2). In addition, the prior events help form the history of the case. See, e.g., Commonwealth v. Jackson, 900 A.2d 936

(Pa. Super. 2006); Commonwealth v. Passmore, 857 A.2d 697 (Pa. Super. 2004); Commonwealth v. Rivera, 828 A.2d 1094 (Pa. Super. 2003). The court, therefore, finds that the probative value of the evidence relating to the prior drug sale outweighs any prejudice to the defendant. Thus, evidence of the prior drug sale is admissible pursuant to Pa.R.Ev. 404(b). The Commonwealth, however, is limited to introducing evidence pertaining to the drug sale between defendant and Mr. Hartzell. The court will give a limiting instruction when the drug evidence is introduced and again at the end of trial if requested by defendant. The Commonwealth is precluded from offering evidence regarding defendant selling drugs to anyone else in the hours prior to the murder during the trial of this matter.